No. 112,560

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GABRIEL A. AGUILAR,
*Appellant*.

SYLLABUS BY THE COURT

1.

In multiple acts cases, the district court is required to instruct the jury that it must unanimously agree on a specific act that constitutes the crime charged or the State must choose which act it is relying upon for conviction.

2.

When a jury instruction issue is raised for the first time on appeal, the standard of review is whether the instruction is clearly erroneous as provided in K.S.A. 2015 Supp. 22-3414(3).

3.

In determining whether an instruction was clearly erroneous, an appellate court first determines whether there was any error. If the instruction was legally and factually appropriate, the district court did not err in giving it.

1

4.

When reviewing jury instructions to determine whether they are legally appropriate and properly state the law, an appellate court considers the instructions together as a whole and does not focus on any one instruction.

5.

The pattern jury instruction on multiple acts, PIK Crim. 4th 68.100, is a correct statement of Kansas law on multiple acts. The use of the word "could" in the instruction is not misleading to jurors as to the required burden of proof.

Appeal from Shawnee District Court; DAVID B. DEBENHAM, judge. Opinion filed February 26, 2016. Affirmed.

*Adam D. Stolte*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin* and *Kyle Edelman*, assistant district attorneys, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., PIERRON, J., and WALKER, S.J.

WALKER, J.: A jury convicted Gabriel A. Aguilar of three counts of aggravated indecent liberties with a child and one count of sexual exploitation of a child. On appeal, Aguilar contends his convictions should be reversed because the jury instruction on multiple acts was clearly erroneous. In particular, he argues that jurors may have interpreted the instruction to mean that the State's evidence already established one of the essential elements of the crime charged, resulting in the district court impermissibly directing the jury to find Aguilar guilty. But since we find that the jury instruction was both legally and factually appropriate, the convictions are affirmed.

FACTS

In January 2013, 9-year-old V.S. lived with her two brothers, her mother (Mother), and Aguilar, Mother's boyfriend, in Aguilar's house in Topeka.

On January 18, 2013, V.S. complained to her mother about a rash between her legs. Mother instructed V.S. to apply some baby powder to the area, thinking it was just chafing. But 2 days later, V.S. told Mother that the rash had not gone away and alleged that Aguilar had been sexually abusing her. V.S. had made a similar allegation 1 year earlier, but her mother thought she was lying and had not reported it. After the latest disclosure, Mother told Aguilar that she and V.S. were going to Walmart, but Mother actually took V.S. to her ex-husband's house to spend the night.

The next day, Mother took V.S. to the hospital to report the sexual abuse allegations. The hospital then called the Topeka Police Department. Detective Jack Sanders and Joy Thomas, a sexual assault nurse examiner, interviewed V.S. at the hospital. During the interview, Sanders learned that Aguilar had allegedly taken explicit photos of V.S. Both Sanders and Thomas said that they would have preferred to have had specially trained interviewers at LifeHouse Child Advocacy Center conduct the first interview with V.S. but that they were unable to do so because the center was closed that day.

The following day, Ann Goodall, a social work specialist with the Kansas Department for Children and Families, interviewed V.S. at LifeHouse. Goodall later testified that V.S. had told her that a male had grabbed her breasts and forced her to touch his penis. Goodall also stated that V.S. had said the male had put his penis in her mouth and tried to put his penis in her vagina. Following that interview, V.S. consented to be physically examined by Thomas, but Thomas did not collect evidence for a rape kit

because 72 hours had passed since V.S. had had any contact with Aguilar. Thomas did not find any physical injuries but noted that a lack of physical injuries was not unusual.

Meanwhile, police officers arrived at Aguilar's house and took him in for questioning. The police then obtained a search warrant for the house and Aguilar's cell phones. On two cell phones, including one that Aguilar identified as his, police discovered over 40 photos of V.S. with her breasts exposed, an adult male's hand groping V.S.'s breasts, an adult male's hand touching the vaginal opening of a juvenile female, and an adult male's penis touching a juvenile female's vaginal area. The police determined that two of the photos, State's Exhibits 9 and 10, had been taken on January 9, 2013, at 9:39 p.m. by the same model of cell phone as Aguilar's.

The State charged Aguilar with three counts of aggravated indecent liberties with a child under 14 years old—one count for touching V.S.'s vaginal area with his fingers, one count for touching her vaginal area with his penis, and one count for touching her breasts with his hands—and one count of sexual exploitation of a child for possessing a sexually explicit photograph of a child under 18 years old. The trial began on March 31, 2014.

During the trial, Mother testified for the State. She was able to recognize and identify the clothing in the photographs as items that V.S. owned, some of which she had turned over to police. She testified that Aguilar had a scar on his thumb that she recognized in some of the photos. Mother also said that she recognized Aguilar's penis in State's Exhibits 43 and 44, which depicted an adult male's penis touching a juvenile's vaginal area.

V.S. also testified. She said that Aguilar had touched her in inappropriate ways during the time she lived with him, but she could not remember when it began. She testified that Aguilar had touched her vagina with his penis once. She recalled that he had touched her vagina with his hands more than once but could not remember if it had

4

happened more than 10 times. She also said that Aguilar had touched her breasts more than five times. She testified that Aguilar took photos of her with his cell phone. She identified herself in many of the photos presented by the State and named Aguilar as the one who took many of the photos. V.S. identified Aguilar as the individual touching her in several of the photos depicting an adult male's hand touching her breast. She recognized the photo depicting an adult male's hand touching a juvenile's vagina and said that Aguilar had taken it. She also testified that she remembered something like the touching depicted in State's Exhibit 44, which displayed an adult male's penis touching a juvenile's vagina, happening to her.

The jury found Aguilar guilty of all four counts. The district court sentenced him to life imprisonment without parole for 25 years for each count of aggravated indecent liberties and 38 months in prison with lifetime postrelease supervision for sexual exploitation of a child. The district court ordered the sentences to run concurrently.

Aguilar appeals his convictions to this court.

ANALYSIS

Although the State brought only three counts of aggravated indecent liberties with a child under 14 years old and one count of sexual exploitation of a child, it presented evidence of multiple incidents that could support each charge. Because criminal defendants have a statutory right to a unanimous verdict, jurors have to agree on a particular act for each of the counts charged when the State has presented evidence of multiple acts. *State v. De La Torre*, 300 Kan. 591, 595, 331 P.3d 815, *cert. denied* 135 S. Ct. 728 (2014); *State v. Santos-Vega*, 299 Kan. 11, 18, 321 P.3d 1 (2014); see K.S.A. 22-3421; K.S.A. 22-3423(1)(d). To ensure jury unanimity in multiple acts cases, the district court must instruct the jury that it must unanimously agree on a specific act that

5

constitutes the crime charged or the State must choose which act it is relying upon for conviction. *State v. Akins*, 298 Kan. 592, 618, 315 P.3d 868 (2014).

Here, the district court gave a separate multiple acts instruction for each charge. For each of those instructions, the district court used the following language, which closely tracks the recommended jury instruction in PIK Crim. 4th 68.100: "The State claims distinct multiple acts which each could separately constitute the crime of _____ as charged in Count ___. In order for the defendant to be found guilty of _____, as charged in Count ___, you must unanimously agree upon the same underlying act."

Aguilar takes issue with the wording of the instruction, arguing the instruction's "imprecise and misleading language . . . resulted in a directed verdict by the judge." He focuses on the word "could" in the first sentence of the instruction and contends that it might have caused jurors to conclude that the evidence presented to support one or all of the multiple acts already met the elements of the crime charged and that they only needed to agree on one act to convict the defendant. Aguilar argues that this would amount to a judicial direction to convict him and would be clear error, entitling him to have his convictions reversed. The State argues that there was no error and, alternatively, that any error does not require reversal.

At least three panels of this court have previously rejected Aguilar's exact argument. See *State v. Billings*, No. 109,726, 2014 WL 6772484, at *4-5 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. ___ (July 22, 2015); *State v. Anderson*, No. 108,415, 2013 WL 6331600, at *3-8 (Kan. App. 2013) (unpublished opinion), *rev. denied* 301 Kan. ___ (January 15, 2015); *State v. Sumpter*, No. 108,364, 2013 WL 6164520, at *7-8 (Kan. App. 2013) (unpublished opinion), *rev. denied* 301 Kan. ___ (January 15, 2015).

6

When a jury instruction issue is raised for the first time on appeal or was not properly preserved with an appropriate objection at trial, the standard of review is whether the instruction is clearly erroneous. K.S.A. 2015 Supp. 22-3414(3); *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012). Because Aguilar did not object to the multiple acts jury instructions at trial, we review the issue for clear error.

In determining whether an instruction was clearly erroneous, the reviewing court first determines whether there was any error at all. *State v. Sisson*, 302 Kan. 123, 129, 351 P.3d 1235 (2015) (citing *Williams*, 295 Kan. 506, Syl. ¶¶ 4-5). To do this, the court must consider whether the instruction was legally and factually appropriate. *Sisson*, 302 Kan. at 129. If the instruction was legally and factually appropriate, then the district court did not err in giving it. If this court finds error, then it must decide whether it is firmly convinced the jury would have reached a different verdict had the error not occurred; the party claiming error has the burden of establishing prejudice. 302 Kan. at 129; *State v. Berney*, 51 Kan. App. 2d 719, 722, 353 P.3d 1165 (2015). In making this determination, the court exercises unlimited review of the record. *Sisson*, 302 Kan. at 129.

First, this court must determine whether the multiple acts instruction was legally appropriate. This court examines "'jury instructions as a whole, without focusing on any single instruction, in order to determine whether they properly and fairly state the applicable law or whether it is reasonable to conclude that they could have misled the jury.'" *State v. Hilt*, 299 Kan. 176, 184-85, 322 P.3d 367 (2014) (quoting *State v. Williams*, 42 Kan. App. 2d 725, Syl. ¶ 1, 216 P.3d 707 [2009], *rev. denied* 290 Kan. 1104 [2010]).

To be legally appropriate, jury instructions must at least fairly and accurately state the applicable law. *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012). The Kansas Supreme Court has repeatedly said that "in a multiple acts case the State alleges several acts, any one of which *could* constitute the crime charged, and the jury must be

7

unanimous as to which act the defendant committed." (Emphasis added.) *State v. Soto*, 299 Kan. 102, 110, 322 P.3d 334 (2014) (citing *State v. Jones*, 295 Kan. 1050, Syl. ¶ 3, 288 P.3d 140 [2012]); accord *De La Torre*, 300 Kan. at 595. In this case, the multiple acts instructions based on PIK Crim. 4th 68.100 and given for each criminal charge reflect an accurate statement of the current law on multiple acts.

Nevertheless, Aguilar contends that the use of "could" in the instructions is problematic. He notes that one meaning of "can," the present tense form of "could," is to "'indicate possession of a specified capability or skill.'" Based on this meaning, Aguilar argues that the jury might have interpreted the instructions to mean that "there is evidence of multiple acts each of which has the *capability or possesses the specific qualities* (in this case elements) to satisfy the crime charged." According to Aguilar, under this interpretation, the instructions given informed the jury that the evidence of the acts already satisfied the elements of the crimes charged and that it needed only to agree on one particular act to convict the defendant. Aguilar argues that this amounts to the district court directing the jury to find him guilty by leading the jury to think that an element of the charged crimes had been proven.

The first problem with Aguilar's argument is that he isolates the word "could" without considering it in context. Aguilar readily acknowledges that "can" and "could" are used to indicate possibility or probability. See Webster's Collegiate Dictionary 178 (11th ed. 2014) (noting "can" is used interchangeably with "may" to indicate possibility). In the instructions, "could" is used to modify "constitute." The phrase "could . . . constitute" expresses possibility and is analogous to "may constitute." *Anderson*, 2013 WL 6331600, at *7; see *Billings*, 2014 WL 6772484, at *4. In other words, the instructions inform the jury that the evidence of multiple acts *may constitute* the crime charged and do not suggest that the evidence certainly or definitively constitutes the crimes charged. Moreover, the multiple acts instructions begin with: "The State *claims* distinct multiple acts . . . ." (Emphasis added.) The use of "claims" indicates that the State

8

is arguing or contending that these multiple acts violate the law; it does not establish that the acts are true or constitute the charged crimes. See *Billings*, 2014 WL 6772484, at *4.

Additionally, Aguilar fails to address other language in the jury instructions that undermines his interpretation. For each count, the instructions informed the jury that "[t]o establish this charge, each of the following claims must be proved" and then listed the required elements that the State must prove. See PIK Crim. 4th 55.121 (aggravated indecent liberties with a child); PIK Crim. 4th 55.180 (sexual exploitation of a child). The burden of proof instruction further provided that the jury must find Aguilar not guilty if it had a reasonable doubt "as to the truth of any of the claims required to be proved by the State." See PIK Crim. 4th 51.010. These instructions underscore the role of the jury to evaluate the State's claims and the State's burden to prove its claims.

Read together, the instructions required the jurors to agree on the specific acts that the State contended to be crimes and to then test the circumstances of the alleged acts against the elements of each charge under the reasonable doubt standard. No reasonable juror would have interpreted the instructions as Aguilar contends. The given multiple acts instructions fairly and properly stated the law and did not mislead the jury. We find that the instructions were legally appropriate.

Next, in determining whether error occurred, this court must consider whether the instructions were factually appropriate, meaning whether they were supported by the particular facts of the case at hand. See *Plummer*, 295 Kan. at 161. In this case, there is no dispute that the State charged Aguilar with various crimes and presented evidence of multiple acts allegedly committed by Aguilar, each of which the State contends was sufficient to support the various crimes charged. Therefore, the multiple acts instructions were factually appropriate.

9

Given that the multiple acts instructions were legally and factually appropriate, the district court did not err in giving them.

Affirmed.