NOT DESIGNATED FOR PUBLICATION

No. 115,598

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER KYLE MOSBY,
*Appellant*.


MEMORANDUM OPINION


Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed June 16, 2017. Affirmed in part, vacated in part, and reversed and remanded in part.


*Caroline Zuschek*, of Kansas Appellate Defender Office, for appellant.


*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before POWELL, P.J., ATCHESON, J., and FAIRCHILD, S.J.


POWELL, J.:  Christopher Kyle Mosby was convicted after a jury trial of burglary of a dwelling and theft. On appeal, Mosby challenges his convictions on the basis that the State failed to provide adequate notice of the theft charge against him and that the district court provided two erroneous jury instructions. Mosby also argues the district court abused its discretion by denying his motion to sequester witnesses, by imposing restitution for items returned, and by failing to properly assess Mosby's financial burden when it imposed Board of Indigent Defense Service attorney fees.

1

Because we agree with Mosby that his due process rights to adequate notice were violated when the State failed to amend its complaint to include the additional items it alleged at trial Mosby stole, we must reverse Mosby's theft conviction and remand for a new trial. We also vacate the district court's restitution order on the grounds that in the absence of the theft conviction restitution may be ordered only for those items taken from the loft as part of the burglary committed by Mosby, and we vacate the district court's BIDS attorney fees order because the district court failed to properly assess Mosby's ability to pay on the record. We affirm the district court in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND

On August 5, 2015, the State charged Mosby with burglary of a dwelling, theft, and criminal damage to property for allegedly stealing tools and jewelry from the home and storage buildings of Emery Wagoner and Kristy Davis. The complaint alleged that Mosby stole property worth more than $1,000 but less than $25,000, including but not limited to 20 specific items. At the preliminary hearing, Wagoner testified that the total loss in property was a little over $3,000.

Just prior to trial, Mosby moved to sequester the witnesses, but the district court flatly denied this motion without explanation.

During the trial, the following information emerged. In May 2015, Wagoner was working out of town, and Davis and her daughters went to visit him leaving their home in Emporia, Kansas, under the care of Mosby. While they were away, Mosby, who was staying in a camper on the property, was to housesit, feed the animals, and do handiwork around the farm. He had access to the outbuildings and the main residence but was not given access to Wagoner and Davis' loft bedroom in one of the outbuildings, which was secured by a padlock. Because Davis had suffered a traumatic brain injury which affected her physical strength, stamina, and short-term memory leaving her unable at times to

2

perform tasks around the property while Wagoner was away with work, Mosby also helped around the farm when Davis was in town.

When Wagoner and Davis returned home after being gone for about a week, they discovered one of their guns was missing. After this discovery, they began to look for other missing items. They discovered various tools and equipment were missing as well as some personal items, including jewelry and household goods. They also noticed that the weather stripping was damaged on the door to their loft bedroom.

Wagoner and Davis filed a police report implicating Mosby. Mosby was pulled over and his truck was impounded. Mosby's truck had numerous items in its bed, some of which matched the items Wagoner and Davis had reported as stolen. At trial, Wagoner and Davis testified that Mosby stole $15,000 to $20,000 in property, though much of this property was returned to them undamaged. The court admitted two lists of property that Wagoner and Davis alleged had been taken: One was a list of property that had been recovered, and the other was a list of property that had not been recovered. During trial, the State amended its complaint to cover a greater number of days in which it alleged the crime occurred, but it did not attempt to amend the list of property in the complaint.

Mosby asserted multiple defenses at trial, which he presented through cross-examination, his own testimony, and his father's testimony. First, Mosby claimed some of the tools found in his truck belonged to him or his family. His father also testified to this claim. Second, Mosby argued that some of the items were in his truck because he had used them to work around Wagoner and Davis' farm and he had not yet put them away when he was pulled over. Finally, Mosby testified that he did not know how some of the items got in his truck—he had not put the items in there and he did not know how they ended up in the truck.

3

The jury convicted Mosby of burglary of a dwelling and theft of property worth more than $1,000 but less than $25,000 but acquitted him of the charge of criminal damage to property. The district court sentenced Mosby to 36 months in prison but placed him on probation from that sentence for 24 months. He was also ordered to pay $1,690 in BIDS attorney fees.

The district court held a separate restitution hearing. At that hearing Wagoner and Davis testified what they believed their stolen property to be worth. They also requested restitution for items discovered missing after the trial. Mosby objected on the grounds that he should not be held financially responsible for compensating Wagoner and Davis for the alleged loss of items for which a jury had not convicted him of stealing. The district court disagreed and ordered Mosby to pay restitution for every item Wagoner and Davis claimed they had lost, at the values they claimed, for a total of $10,531.33. The State did not submit any other evidence of the value of the items for which it sought restitution.

Mosby timely appeals.

On appeal Mosby raises five allegations of error: (1) The State did not provide adequate notice of the theft charge against him because the charging document did not list all of the items the State alleged at trial he stole; (2) the district court gave two erroneous instructions to the jury—one that defined theft broader than it was defined in the complaint, and the second a multiple acts instruction on burglary; (3) the district court erred in denying Mosby's motion to sequester the witnesses; (4) the district court erred in its order of restitution by ordering Mosby to pay restitution on items that were returned to Wagoner and Davis and for items the jury did not find him guilty of stealing; and (5) the district court erred by ordering Mosby to pay BIDS attorney fees without considering on the record his financial resources and the burden the fees would impose. Each argument will be addressed in turn.

4

First, Mosby argues he did not receive adequate notice of the charges against him because the charging document did not list all of the items the State alleged at trial he stole, resulting in his inability to prepare an adequate defense for trial or for the restitution hearing.

We do "not generally review constitutional claims raised for the first time on appeal." *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). However, an accused may raise a constitutional due-process notice challenge to a criminal complaint for the first time on appeal if he or she can demonstrate an exception to this general rule. See *State v. Dunn*, 304 Kan. 773, 817-18, 375 P.3d 332 (2016). K.S.A. 2016 Supp. 22-3208(3) states that if the defendant does not raise an issue with the complaint during the pendency of the proceeding, waiver applies; however, if the defendant can later raise the issue "for cause shown," the court may grant relief.

> "If a defendant can demonstrate that a charging document was so bare bones that he or she was unable to appreciate an infringement of due process or notice rights until evidence began to come in at trial or later, then it is not hard to imagine that a judge of the district court or a majority of judges on an appeals panel will excuse a late challenge to a charging document for 'cause shown.' We therefore do not regard the statute as much of an impediment to a defendant seeking to raise a charging document challenge for the first time on appeal." 304 Kan. at 818.

Here, Mosby specifically argues that his failure to raise the issue below should be excused to serve the ends of justice and to prevent the denial of his fundamental rights. Mosby argues he did not realize that he lacked sufficient notice of the items he was charged with stealing until the restitution hearing when the district court ordered him to pay restitution for items not listed in the complaint or presented at trial. We agree with Mosby that his fundamental right to due process is implicated by any alleged failure of

the charging document, so we will consider the merits of his argument. Challenges to charging documents on appeal are reviewed de novo. 304 Kan. at 819.

"In criminal cases, prosecuted under the laws of the United States, the accused has the constitutional right 'to be informed of the nature and cause of the accusation.' Amend. VI." *United States v. Cruikshank*, 92 U.S. 542, 557-58, 23 L. Ed. 588 (1875); see also *State v. Loudermilk*, 221 Kan. 157, 158-59, 557 P.2d 1229 (1976) (defendant has right under Sixth Amendment to notice of charge). Under the Fourteenth Amendment to the United States Constitution, due process requires that a person be afforded a right to be heard in a meaningful way before being deprived of "life, liberty, or property." U.S. Const. amend. XIV, § 1; see *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' [Citation omitted.]").

> "'It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, "includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars."'" *Russell v. United States*, 369 U.S. 749, 765, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962) (quoting *Cruikshank*, 92 U.S. at 558).

K.S.A. 22-3201(b) requires a criminal complaint to be "a plain and concise written statement of the essential facts constituting the crime charged." Our Supreme Court has held that "[t]he charging instrument must set out the specific offense alleged against the defendant in order to inform the defendant of the nature of the accusation against him or her and to protect the defendant from being convicted on the basis of facts that were not contemplated in the initial charges." *State v. Trautloff*, 289 Kan. 793, 802, 217 P.3d 15 (2009); see also *State v. Hart*, 297 Kan. 494, 508, 301 P.3d 1279 (2013) (charging instrument must be specific in order "to protect against conviction based on facts not contemplated in the accusation"). Where a failure of proper notice adversely affects the

6

defendant's ability to prepare for and present his defense, reversal of the conviction is the remedy. See *State v. Wade*, 284 Kan. 527, 536-37, 161 P.3d 704 (2007).

In *State v. Rollins*, No. 111,491, 2015 WL 1947237 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. 1081 (2016), the State only listed an unassembled storage closet in the complaint as the property the defendant stole; however, at trial, the State presented evidence that the defendant also stole packages of nails. Another panel of our court held that the State erred when it failed to amend the complaint to specify all of the property the defendant stole because the jury convicted the defendant of theft of nails when the complaint alleged only the theft of the storage closet. 2015 WL 1947237, at *3-5.

*Rollins* is similar to the case at hand. Here, the language "including, but not limited to" put no limits on the property that Mosby could have been convicted of stealing. Further, at the preliminary hearing the State only presented evidence of the items listed in the complaint. It was only at trial that Mosby first knew of additional items the State would be alleging he stole; even later still, at the restitution hearing, he discovered the State would be seeking restitution for items not listed in the complaint or presented at trial as stolen. In neither instance was Mosby provided adequate time to prepare a defense. Because the complaint must be a plain and concise written statement of the essential facts constituting the crime charged and the complaint against Mosby fell short of this requirement, the State erred by not amending its complaint to include all of the items it would be alleging Mosby stole. See K.S.A. 22-3201(b).

Review of an error in the charging document "will be guided by the test for harmlessness applicable to federal constitutional error. [Citation omitted.] . . . [A] similarly stringent test will also be applied to evaluate the prejudicial effect of a charging document error implicating state constitutional due process or notice rights." *Dunn*, 304 Kan. at 817.

7

"Under the constitutional harmless error standard, we may declare an error harmless only if '"the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict."' [Citations omitted.]" *State v. Bolze-Sann*, 302 Kan. 198, 216, 352 P.3d 511 (2015).

Here, the State bears the burden of proving that there is no reasonable possibility the error contributed to the verdict. The evidence at trial placed Mosby at every structure on the property, and the State argues that because the charged items were so varied and found in different places, there is no way the additional items contributed to undermine the verdict.

Mosby had no opportunity to present his defense for the additional items the State would be alleging he stole. For example, at trial, Mosby presented testimony from his father corroborating his testimony that many of the items found in his truck were his or his family's tools. Mosby was not able to present corroborating testimony as to items he had no notice before trial the State alleged he stole, thus depriving him of his opportunity to present a complete defense. See *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984) (Due Process Clause requires criminal defendant be afforded "meaningful opportunity to present a complete defense"); *State v. Irons*, 250 Kan. 302, 309, 827 P.2d 722 (1992) ("'It is fundamental to a fair trial to allow the accused to present his version of the events.'").

The State's argument that the evidence placed him at every structure on the property is unpersuasive as Mosby was not given the opportunity to dispute the evidence presented with a full defense to each item because he had no notice the State would allege those items were stolen. Unlike in *Rollins*, where the panel concluded the error was harmless because Rollins received notice at the preliminary hearing the State would be discussing the nails she stole, Mosby received no notice the State would be alleging he

8

stole additional property. In fact, between the preliminary hearing and the trial, the value of property Mosby allegedly stole jumped from nearly $3,000 to upwards of $15,000 without the State ever amending the complaint. This was a violation of Mosby's right to present a defense, and the State has not met its burden to show that there is no reasonable possibility that the error contributed to the verdict. There is no way to know if the jury would have believed Mosby's defense as to one of the pieces of property for which he was not charged for but convicted of stealing. Such a denial of rights requires the reversal of Mosby's theft conviction.

## DID THE DISTRICT COURT PROVIDE ERRONEOUS JURY INSTRUCTIONS?

Second, Mosby argues that two of the jury instructions given by the district court were in error.

> "For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

A. *Jury Instruction for Theft*

Mosby complains the theft jury instruction was overly broad because the jury instruction used "the property" rather than listing all of the pieces of property the State

9

alleged Mosby stole. The jury instruction at issue here read:

> "The defendant is charged in Count II with theft. The defendant pleads not guilty.
>
> "To establish this charge, each of the following claims must be proved:
>
> 1. Emery Wagoner and Kristy Davis were the owners of the property.
>
> 2. The defendant obtained or exerted unauthorized control over the property.
>
> 3. The defendant intended to deprive Emery Wagoner and Kristy Davis permanently of the use or benefit of the property.
>
> 4. The value of the property was at least $1,000 but less than $25,000.
>
> 5. This act occurred on, about or between the 22nd day of May, 2015, and the 2nd day of June, 2015, in Lyon County, Kansas."

K.S.A. 2016 Supp. 21-5801(a)(1) provides that theft is obtaining or exerting unauthorized control over property or services with the intent to permanently deprive the owner of the possession, use, or benefit of the property. This instruction for theft mirrors the pattern jury instruction. See PIK Crim. 4th 58.010 (2016 Supp.). Mosby did not object to this instruction at trial. If there is no objection to a jury instruction at trial we will not overturn a conviction unless the instruction was clearly erroneous. K.S.A. 2016 Supp. 22-3414(3).

> "When presented with a claim that a jury instruction was clearly erroneous, we first determine whether the instruction was erroneous. See *State v. Trujillo*, 296 Kan. 625, Syl. ¶ 1, 294 P.3d 281 (2013). This court asks whether the instruction was both factually and legally appropriate. See *Trujillo*, 296 Kan. at 630-31. . . . An overbroad instruction is erroneous because the charging instrument sets out the specific offense alleged to inform the defendant of the nature of the accusation, to permit the development of a defense to meet that accusation, and to protect against conviction based on facts not contemplated in the accusation. See *State v. Trautloff*, 289 Kan. 793, 802-03, 217 P.3d 15 (2009)." *Hart*, 297 Kan. at 508.

"A trial court has the duty to define the offense charged in the jury instructions, either in the language of the statute or in appropriate and accurate language of the court."

10

*State v. Richardson*, 290 Kan. 176, 181, 224 P.3d 553 (2010). The trial court must "inform the jury of every essential element of the crime that is charged." 290 Kan. at 181. Jury instructions should not be broader than the charging document. See *Trautloff*, 289 Kan. at 802. The State is bound by the language of its charging document, and the State and district court must use caution in conforming the jury instructions to the charges. *State v. Haberlein*, 296 Kan. 195, 210-11, 290 P.3d 640 (2012). An instruction that is broader than the charging document is erroneous, and that error is only excusable if the substantial rights of the defendant are not prejudiced. *State v. Jones*, 290 Kan. 373, 383-84, 228 P.3d 394 (2010).

In *Jones*, 290 Kan. at 383-84, the jury instruction on aggravated kidnapping was broader than the charge in the complaint. Our Supreme Court found that adding an instruction on aggravated kidnapping added an element to the charged crime and exposed the defendant to the risk that the jury may have convicted him based on an uncharged element of a crime. Here, the jury instruction correctly defined the essential elements of the crime charged and was not broader than the complaint because both the complaint and the jury instruction alleged theft correctly under the statutorily enumerated elements. Unlike in *Jones*, the jury instruction here did not add an element to the crime that Mosby was charged with. He was charged with theft, and the jury instruction provided the jury with the essential elements of theft. There was no error in the district court's theft instruction.

B.      *Multiple Acts Instruction on Burglary*

Mosby also argues the district court erred when it gave the jury a multiple acts instruction on burglary. Specifically, he argues that because the State elected to rely on the burglary of the loft bedroom in its arguments concerning the burglary charge, a multiple acts instruction was not appropriate. The State responds that because it was also

going to discuss items removed from the main residence, a multiple acts instruction was appropriate.

The instruction at issue reads:

"The State claims distinct multiple acts which each could separately constitute the crime of burglary of a dwelling. In order for the defendant to be found guilty of burglary of a dwelling, you must unanimously agree upon the same underlying act."

At trial, the following exchange occurred:

"[THE COURT:]  The next is what I would call the multiple acts instruction. I've included it at this point because I believe there are multiple acts that would support the one charge of burglary of a dwelling, because we have testimony here that describes both the entry into or remaining in both the principal residence as well as the loft above the shop. Is there any objection to use of this instruction?

"[THE STATE]:  No, Judge. I will probably—I'm going to elect, as far as talking about the loft to the jury, as the burglary, but I think, just to be safe, to protect any verdict that we may get, I'm not going to—I think it's fine to leave it in.

"THE COURT:  [Defense.]

"[THE DEFENSE]:  And I would just argue, Your Honor, that if [the State] wasn't electing on which—which building she was going to specifically refer to and argue in closing, that there really wouldn't be a need for multiple acts, if she's going to specifically elect that.

"THE COURT:  If you're going to elect to proceed only on the acts relating to the loft, then I think it's appropriate that we do not use the multiple acts instruction.

"[THE STATE]:  I am, Judge. My only concern would be about—I am going to talk about the theft of the items that—of the personal nature that came out of the main residence.

"THE COURT:  Then, I'm going to give the multiple acts instruction."

12

The district court then granted Mosby's request for a continuing objection regarding the instruction, so this issue is properly preserved for appeal.

The next inquiry is determining whether this instruction was legally appropriate because of the State's election in the jury instruction conference and the closing argument. We examine "'jury instructions as a whole, without focusing on any single instruction, in order to determine whether they properly and fairly state the applicable law or whether it is reasonable to conclude that they could have misled the jury.'" *State v. Hilt*, 299 Kan. 176, 184-85, 322 P.3d 367 (2014) (quoting *State v. Williams*, 42 Kan. App. 2d 725, Syl. ¶ 1, 216 P.3d 707 [2009], *rev. denied* 290 Kan. 1104 [2010]). Jury instructions must fairly and accurately state the applicable law to be legally appropriate. *Plummer*, 295 Kan. at 161. "[I]n a multiple acts case the State alleges several acts, any one of which could constitute the crime charged, and the jury must be unanimous as to which act the defendant committed." *State v. Soto*, 299 Kan. 102, 110, 322 P.3d 334 (2014). In light of the State's election, such an instruction was not required. See *State v. Sprague*, 303 Kan. 418, 423, 362 P.3d 828 (2015). However, giving such an instruction is permissible as it is a correct statement of the law because, by statute, the jury must be unanimous. See K.S.A. 22-3421; K.S.A. 22-3423(1)(d); *State v. Voyles*, 284 Kan. 239, 250, 160 P.3d 794 (2007) ("[T]he right to a unanimous jury verdict in a Kansas court is not a federal constitutional right or a state constitutional right, but rather a state statutory one.").

Mosby also takes issue with the use of the word "could" in the multiple acts instruction, specifically arguing that the use of the word "could" equates to a directed verdict. Several other panels of our court have already considered and rejected Mosby's argument. See *State v. Aguilar*, 52 Kan. App. 2d 466, 472-73, 367 P.3d 324 (2016); *State v. Billings*, No. 109,726, 2014 WL 6772484, at *4-5 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. 1012 (2015); *State v. Anderson*, No. 108,415, 2013 WL 6331600, at *3-8 (Kan. App. 2013) (unpublished opinion), *rev. denied* 301 Kan. 1047

(2015); *State v. Sumpter*, No. 108,364, 2013 WL 6164520, at *7-8 (Kan. App. 2013) (unpublished opinion*), rev. denied* 301 Kan. 1051 (2015). Just as in the cases cited, Mosby fails to address other language in the jury instructions that undermines his interpretation that the instruction amounts to a directed verdict.

The burglary instruction informed the jury that "[t]o establish this charge, each of the following claims must be proved" and then listed the required elements that the State must prove. See PIK Crim. 4th 58.120 (2016 Supp.). Additionally, the burden of proof instruction further directed the jury to find Mosby not guilty if it had a reasonable doubt "as to the truth of any of the claims required to be proved by the State." See PIK Crim. 4th 51.010. When reading the instructions as a whole, the instructions required the jurors to agree on the specific acts that the State presented evidence on and then test the alleged acts against the elements of each charge under the reasonable doubt standard. No reasonable juror would read the instruction to believe that the court was directing a verdict. See *Aguilar*, 52 Kan. App. 2d at 472-73. Because the instruction properly stated the law and did not mislead the jury, we conclude that the multiple acts instruction was legally appropriate.

We must next decide if the multiple acts instruction was factually appropriate when viewing the instruction in the light most favorable to the defendant. Here, the jury heard evidence of multiple acts. The State presented evidence that Mosby did not have keys to the loft and did not have authority to be there. Mosby did have keys to the main house but he was not given free run of the residence—he only had permission to feed the animals and himself while in the main residence. Evidence was presented that items were stolen from the main residence and items from the bedrooms of the main residence were presented as stolen at trial. The jury heard evidence of two acts that could constitute burglary of a dwelling, and only the burglary of the loft had been charged. See *State v. Maxwell*, 234 Kan. 393, 397, 672 P.2d 590 (1983) (When consent to enter a dwelling is "obtained by fraud, deceit or pretense the entry is not an authorized entry under the

14

statute in that it is based on an erroneous or mistaken consent. Any such entry is unauthorized, and when accompanied by the requisite intent is sufficient to support a burglary or aggravated burglary conviction."); see also *State v. Johnson*, 266 Kan. 322, 331, 970 P.2d 990 (1998) (stating holding in *Maxwell* is not applicable "where the entry was made without any restriction or limitation"). Because the jury heard evidence of two acts that could constitute burglary of a dwelling, it was factually appropriate for the district court to give a multiple acts instruction. There was no error.

## DID THE DISTRICT COURT ERR BY DENYING MOSBY'S MOTION TO SEQUESTER THE WITNESSES?

Third, Mosby argues the district court erred in denying his motion to sequester the witnesses. Specifically, he argues that Davis' traumatic brain injury affects her short-term memory and she should have been sequestered to prevent her from tailoring her testimony to match the testimony of the other witnesses.

A district court's decision to sequester witnesses is discretionary, and we review a denial of a motion to sequester witnesses for an abuse of discretion. *State v. Sampson*, 297 Kan. 288, 292, 301 P.3d 276 (2013). A judicial action is an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

Before trial, Mosby's counsel requested that the witnesses be sequestered. The exchange was very brief:

"[THE DEFENSE]:  Your Honor, I would ask for sequestration.
"THE COURT:  The request is denied."

15

The perfunctory handling of this issue makes it difficult for us to review the district court's decision to deny Mosby's sequester request. First, Mosby failed to apprise the district court of why he wanted to sequester the witnesses—namely that Davis' injury made it difficult for her to recall events. Second, the matter-of-fact nature of the sequester request likely prompted the district court's flat denial. Unfortunately for us, we are unable to discover why the district court denied the sequester request and therefore cannot evaluate the district court's exercise of its discretion here. But even if we assume the district court abused its discretion, any error was harmless. The record fails to establish that Davis was present during any of the testimony, and Mosby's counsel does not point to any portion of the record that indicates Davis tailored her testimony to that of other witnesses or that she was unable to recall events.

## DID THE DISTRICT COURT ERR IN ITS ORDER OF RESTITUTION?

Fourth, Mosby argues the district court erred in its order of restitution. Specifically, he argues the district court abused its discretion when it ordered Mosby to pay restitution on items that were returned to Wagoner and Davis and for items the jury did not find him guilty of stealing.

> "An appellate court's review of a restitution order can involve three standards of review. Issues regarding the amount of restitution and the manner in which it is made to the aggrieved party are normally subject to review under an abuse of discretion standard. [Citation omitted.] However, a district judge's factual finding of causation between the crime and the victim's loss is subject to a substantial competent evidence standard of review. [Citation omitted.] Finally, this court has unlimited review over the district court's interpretation of statutes. [Citation omitted.]" *State v. Dexter*, 276 Kan. 909, 912-13, 80 P.3d 1125 (2003).

Again, judicial action is abused if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Ward*,

16

292 Kan. at 550. The court's determination of restitution must be based on reliable evidence that yields a defensible restitution figure; however, the rigidness and proof of value that lies in a civil damage suit does not apply in a criminal case. *State v. Casto*, 22 Kan. App. 2d 152, 154, 912 P.2d 772 (1996). A victim of a property crime is entitled to restitution only up to the amount of his or her loss. See *State v. Hinckley*, 13 Kan. App. 2d 417, 418, 777 P.2d 857 (1989).

Mosby preserved this issue for appeal by objecting to the imposition of restitution at the hearing, arguing that the district court could not impose restitution for items that were returned to the victims undamaged and for items that Mosby was not convicted of stealing.

The following table lists the items for which the State sought restitution by Mosby. The table is divided into three parts: (1) items listed in the complaint; (2) items not listed in the complaint but mentioned at trial; and (3) items not listed in the complaint and not mentioned at trial.

| Items listed in the complaint for which the district court ordered restitution | | |
|---|---|---|
| Number | Item | Value |
| 1 | DeWalt drill bit set | $70.00 |
| 2 | SnapOn 1/4" drive swivel socket set | $175.00 |
| 3 | Opal ring | $100.00 |
| 4 | Black diamond cross necklace | $300.00 |
| 5 | United States Marine Corps survival knife | $150.00 |
| 6 | Assault 12-gauge shotgun | $300.00 |
| 7 | Cobra walkie-talkies with charger | $110.00 |
| 8 | Driveway doorbell | $50.00 |
| 9 | Dremel set | $45.00 |
| 10 | SnapOn angle wrenches | $60.00 |
| | Total: | $1,360.00 |
| Items not listed in the complaint but presented at trial for which the district court ordered restitution | | |
| 1 | 4 SnapOn box wrenches, black | $200.00 |
| 2 | 10-amp battery charger, black | $75.00 |
| 3 | 4 20' log chains; 3 15' log chains | $225.00 |
| 4 | DeWalt sheetrock screw gun | $75.00 |
| 5 | Rueger pellet rifle with scope | $100.00 |
| 6 | Stanley 3-lb. hammer | $40.00 |
| 7 | SnapOn torque drivers (T15 and T20) | $40.00 |

| | | |
|---|---|---|
| 8 | SnapOn 1/4" drive ratchet with plastic handle | $65.00 |
| 9 | 4 SnapOn 3/8" drive extensions, 6" | $80.00 |
| 10 | 4 SnapOn 3/8" drive extensions, 4" | $65.00 |
| 11 | 4 SnapOn 3/8" drive extensions, 2" | $50.00 |
| 12 | SnapOn 3/8" drive extension, 12" | $40.00 |
| 13 | 3 oil filter wrenches | $45.00 |
| 14 | GearWrench wrenches (3/4", 5/8", 9/16", and 1/2") | $50.00 |
| 15 | 2 SnapOn 1/2" drive extensions (12" and 8") | $100.00 |
| 16 | 4 C-clamps (2", 3", 4", and 6") | $40.00 |
| 17 | SnapOn scraper, 8" | $40.00 |
| 18 | Lawson hole saw kit | $75.00 |
| 19 | 4 3" ratchet straps, 20' | $175.00 |
| 20 | Set of nut runners | $75.00 |
| 21 | Snap-ring pliers | $30.00 |
| 22 | Wire brushes | $20.00 |
| 23 | Sawzall blade, 12" | $15.00 |
| | Total: | $1,720.00 |

**Items not listed in the complaint or presented at trial for which the district court ordered restitution**

| | | |
|---|---|---|
| 1 | Hunger Games pocket watch | $18.00 |
| 2 | Sig Sauer Nitron air pistol | $44.99 |
| 3 | Old Timer zebra pocket knife | $25.99 |
| 4 | 6 arrows | $89.90 |
| 5 | 2 Sony MP3 players | $319.98 |
| 6 | Safety belt with lanyard/rope | $350.00 |
| 7 | Sony 9" tablet | $129.00 |
| 8 | 20" flat screen TV | $189.00 |
| 9 | 3 SnapOn angle wrenches (11/16", 5/16", 11/32") | $109.00 |
| 10 | 1 spool (150') grey Romex flexible conduit wire | $150.00 |
| 11 | 2 SnapOn 3/8" swivel ratchets | $120.00 |
| 12 | Camouflage pocket knife | $20.00 |
| 13 | 3 metal drill boxes with bits | $100.00 |
| 14 | DeWalt cordless light/battery | $140.00 |
| 15 | DeWalt 3/8" electric drill | $150.00 |
| 16 | Coleman lantern | $45.00 |
| 17 | 3 fluke meters | $150.00 |
| 18 | Ratchet and socket set | $45.00 |
| 19 | Air bubble | $45.00 |
| 20 | Blue tool belt, new | $65.00 |
| 21 | Estwing waffle-head hammer | $35.00 |
| 22 | Estwing flathead hammer | $35.00 |
| 23 | Set of torque drivers | $25.00 |
| 24 | Metric wrenches | $35.00 |
| 25 | Standard wrenches up to 1 1/4" | $50.00 |
| 26 | Leather welding sleeves | $60.00 |
| 27 | 20-piece screwdriver set | $30.00 |
| 28 | 3 Vicegrip C-clamp pliers | $75.00 |
| 29 | Pop rivet gun | $25.00 |
| 30 | Chalkline with plumb bob | $25.00 |
| 31 | DeWalt cordless skillsaw | $75.00 |
| 32 | 2 4" grinders | $250.00 |
| 33 | 2 electric sanders | $80.00 |

| | | |
|---|---|---:|
| 34 | 6 metal files (10" and 12") | $150.00 |
| 35 | 6 wood files (10" and 12") | $85.00 |
| 36 | 3 100' extension cords; 1 50' extension cord; 2 25' extension cords | $250.00 |
| 37 | 6" Indian porcelain doll | $25.00 |
| 38 | Land's End book bag | $30.00 |
| 39 | SanDisk MP3 player | $50.00 |
| 40 | Eclipse MP3 player | $50.00 |
| 41 | Spool of DVD-Rs | $26.00 |
| 42 | Spool of CD-Rs | $15.00 |
| 43 | ihome portable speaker | $35.00 |
| 44 | Dog obedience shock collar | $150.00 |
| 45 | Dog muzzle | $25.00 |
| 46 | 3 Igloo chest freezers | $75.00 |
| 47 | Binoculars | $200.00 |
| 48 | 2-lb. sledge hammer | $30.00 |
| 49 | 3-lb. sledge hammer | $35.00 |
| 50 | Spud wrench, 18" | $65.00 |
| 51 | 6 pairs work gloves | $60.00 |
| 52 | 10 pairs jersey gloves | $15.00 |
| 53 | Craftsman 3-drawer rally box | $125.00 |
| 54 | 1 set Craftsman 3/8" deep well sockets on bar | $45.00 |
| 55 | 1 set Craftsman 3/8" sockets on bar | $35.00 |
| 56 | Tap & Die set | $200.00 |
| 57 | 150 misc. sockets | $150.00 |
| 58 | Splitting maul | $45.00 |
| 59 | 2 splitting wedges | $30.00 |
| 60 | Spindle, wheel hub & bearings | $50.00 |
| 61 | Diecast metal '57 Chevy | $20.00 |
| 62 | Jesse James remote control car | $100.00 |
| 63 | Orange County Chopper remote control motorcycle | $100.00 |
| 64 | Torx drive socket set | $65.00 |
| 65 | Steering wheel puller tool | $25.00 |
| 66 | Roll of 10 ml plastic | $26.00 |
| 67 | Large bottle Locktite thread sealer | $35.00 |
| 68 | 3 round-nose shovels | $75.00 |
| 69 | Sharp shooter shovel | $30.00 |
| 70 | Bungee cords | $60.00 |
| 71 | Bar & chain oil, 1 gallon | $15.00 |
| 72 | Spade | $35.00 |
| 73 | WalMart gift cards | $15.00 |
| 74 | Jumper cables | $15.00 |
| 75 | Flashlight | $8.50 |
| 76 | 8-way wrench | $15.00 |
| 77 | Hex bit driver set | $35.00 |
| 78 | Stanley tape measures (3', 10', 20', 25') | $150.00 |
| 79 | Blue Nintendo DS | $200.00 |
| 80 | 2 1-Troy-oz. silver coins | $2.00 |
| 81 | 2 1922 Liberty silver dollars | $2.00 |
| 82 | 3 utility knives | $18.00 |
| 83 | 3' pry bar | $30.00 |
| 84 | 30 cans misc. spray paint | $60.00 |

| | | |
|---|---|---|
| 85 | 3 packages of Sevin dust | $18.00 |
| 86 | Oil pan | $10.00 |
| 87 | 4 claw hammers | $160.00 |
| 88 | 2 socket racks | $9.98 |
| 89 | 4-pc. adjustable wrench set | $56.99 |
| 90 | 2 12-pc. box-end wrench sets (1 metric, 1 standard) | $70.00 |
| 91 | Red grocery basket with 4 tackle boxes | $400.00 |
| 92 | Propane heater | $65.00 |
| 93 | Laser level, new | $40.00 |
| 94 | Paint brushes and rollers | $20.00 |
| 95 | Carhartt jacket | $50.00 |
| 96 | T-Mobile internet jet | $100.00 |
| | Total: | $7,293.33 |
| | Grand total: | $10,373.33 |

In *Dexter*, 276 Kan. at 918, our Supreme Court interpreted K.S.A. 21-4610(d) (now K.S.A. 2016 Supp. 21-6607[c][2]) as providing an "essential, statutorily mandated requirement that the loss be caused by, not merely connected to, the crime of conviction." Because of this mandate, as a matter of law,

"a district court, when sentencing a defendant to probation, may only order restitution for losses or damages caused by the crime or crimes for which the defendant was convicted unless, pursuant to a plea bargain, the defendant has agreed to pay for losses not caused directly or indirectly by the defendant's crime." 276 Kan. at 919.

The district court here ordered Mosby to pay restitution in two problem areas: (1) items that Davis and Wagoner discovered missing after the trial; and (2) items that were not included in the complaint but for which the State presented evidence at trial of their theft.

We must decide if the district court abused its discretion in ordering Mosby to pay restitution on items that Davis and Wagoner discovered missing after trial and were not presented at trial as stolen. Based on the tables above, it appears that the district court ordered Mosby to pay $9,013.33 in restitution for items not included in the complaint. Davis and Wagoner had nearly 7 months to discover items were missing between the

20

time of the theft and the trial. Mosby was not charged with theft of these items. Fortunately, we have three cases decided by other panels of our court with facts similar to ours to aid us in our task.

First, in *State v. Chandler*, No. 107,111, 2013 WL 1234223 (Kan. App. 2013) (unpublished opinion), a highly collectible Lincoln penny went missing. Around the same time, the penny owner's file cabinet was broken into and a coin collection worth $13,783 was stolen. The defendant was caught with the penny when he showed it to a local coin dealer, who recognized it and returned it to the owner. The State charged the defendant with theft of the penny (a felony because the single coin was worth more than $1,000) and criminal damage to property for damage to the file cabinet. But the State did not charge the defendant with theft of the coin collection. The district court ordered restitution for the coin collection, but our court vacated the restitution order because the defendant was never charged with stealing the coin collection and had not agreed to pay restitution for it in a plea agreement. 2013 WL 1234223, at *2.

The other two cases are conflicting. In *State v. Miller*, 51 Kan. App. 2d 869, 355 P.3d 716 (2015), the defendant was charged with burglary and theft, and, as part of a plea deal, the defendant pled guilty to both. However, a dispute arose concerning restitution. The defendant was only accused of stealing a machete and baby powder, and he did not object to paying restitution on those items. However, according to the complaining witness, there were large holes cut in the house's drywall and copper plumbing was apparently removed. A receipt for this copper plumbing was found on the defendant. The State sought restitution for plumbing and electrical repairs performed as a result of the alleged damage caused by the break in. The panel held that although the district court's factual finding that the losses related to the attempted theft of copper wiring and plumbing were the direct result of the defendant's actions and were supported by evidence, the losses were not the direct result of the defendant's crimes of conviction and the district court erred by ordering restitution for the damages. 51 Kan. App. 2d at 874.

21

Conversely, in *State v. Futrell*, 53 Kan. App. 2d 272, 387 P.3d 176 (2016), *petition for rev. filed* January 9, 2017, another panel of our court specifically disagreed with *Miller* and held restitution could be ordered for items stolen as a result of a burglary even in the absence of a theft conviction. There, the defendant was charged with two counts each of burglary and theft for break-ins of the victim's van and residence. The defendant pled no contest only to the burglary count involving the residence. All the other charges were dismissed as part of the plea agreement, but no agreement was reached as to restitution. The district court ordered restitution for damages done to the van and home and for items taken out of the van and home. Consistent with *Chandler* and *Miller*, the panel vacated that part of the restitution order concerning the van. However, with regard to the residence, the panel departed from *Miller* and held that a restitution order need not directly flow from the crime but may be ordered even when the loss indirectly flows from the crime of conviction. Stated the panel: "The burglary and the theft composed a single criminal undertaking and were immediately linked in both time and place. The burglary was a necessary factual precursor to the theft—absent the break-in itself [the defendant] would not have been in a position to steal the money." *Futrell*, 53 Kan. App. 2d at 282. We agree with the *Futrell* panel's reasoning.

In the present case, Mosby was ordered to pay restitution for items he was neither charged with nor convicted of stealing. Given our reversal of Mosby's theft conviction, we must vacate the restitution order in its entirety except as it concerns those items taken as a result of the burglary of the loft bedroom area. Given that Mosby could not have been able to steal any of the items located in the loft without burglarizing it, consistent with the reasoning in *Futrell*, those losses flow indirectly from the burglary conviction. Accordingly, the restitution order is vacated and remanded to the district court to refashion it consistent with the burglary conviction.

Fifth, Mosby argues the district court erred by ordering him to pay Board of Indigents' Defense Services (BIDS) attorney fees without considering his financial resources and the burden the fees would impose.

K.S.A. 22-4513 allows the imposition of BIDS attorney fees if the defendant is convicted. "[S]tatutory interpretation is a question of law over which appellate courts have unlimited review." *State v. Jeffries*, 304 Kan. 748, 751, 375 P.3d 316 (2016). "In determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." K.S.A. 22-4513(b).

> "[T]he sentencing court, at the time of initial assessment, must consider the financial resources of the defendant and the nature of the burden that payment will impose *explicitly*, stating on the record how those factors have been weighed in the court's decision. Without an adequate record on these points, meaningful appellate review of whether the court abused its discretion in setting the amount and method of payment of the fees would be impossible." *State v. Robinson*, 281 Kan. 538, 546, 132 P.3d 934 (2006).

A district court's failure to make such explicit findings is grounds for remand. See *State v. Hawkins*, 285 Kan. 842, 854, 176 P.3d 174 (2008).

At sentencing, Mosby indicated that he was offered full-time employment and had been on work release during which he maintained employment. However, there was no indication as to how much he was making. When the district court imposed BIDS attorney fees, it stated, "Since you are employed, I do believe that you have the ability to reimburse the State for costs and expenses advanced on your behalf, and so I will assess to you . . . the BIDS' attorney's fees in the amount of $1,690." Mosby made no objection

23

to the district court's failure to inquire about his financial resources or the burden a reimbursement payment would place on him. However, "a failure to object to the imposition of BIDS fees has not disallowed parties from raising the issue for the first time on appeal. See *Robinson*, 281 Kan. at 541; *State v. Hawkins*, 37 Kan. App. 2d 195, 197, 152 P.3d 85 (2007), *aff'd* 285 Kan. 842, 176 P.3d 174 (2008)." *State v. Knight*, 44 Kan. App. 2d 666, 687, 241 P.3d 120 (2010), *rev. denied* 292 Kan. 967 (2011).

In *Knight*, the district court asked Knight how much he could pay and when he could start paying it back; it did not inquire into Knight's financial resources. However, "[t]he trial court also did not consider the nature of the burden a reimbursement payment would impose on Knight. Finally, the court did not state how those factors were weighed in coming to the decision to impose a reimbursement payment on Knight." 44 Kan. App. 2d at 687. The facts in *Knight* are similar to the facts at hand. The district court here did not explicitly inquire about Mosby's financial resources, and it did not explicitly consider the burden that repayment of BIDS attorney fees would impose on Mosby, stating on the record how those factors weighed in the district court's decision. See *Robinson*, 281 Kan. at 546.

Consequently, the district court erred in ordering Mosby to pay BIDS attorney fees without first making the proper *Robinson* inquiries on the record. Accordingly, we vacate the order imposing $1,690 in BIDS attorney fees and remand for the district court to make the appropriate *Robinson* inquiries on the record regarding Mosby's payment of BIDS attorney fees.

For the reasons explained above, we affirm Mosby's burglary conviction, reverse his theft conviction, vacate the district court's restitution and BIDS attorney fees orders, and remand the case for further proceedings consistent with this opinion.