(387 P.3d 176)

No. 115,160

STATE OF KANSAS, *Appellee*, v. CHRISTOPHER SCOTT FUTRELL, *Appellant*.

—

Opinion filed December 23, 2016.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Barry K. Disney*, assistant county attorney, *Barry Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., LEBEN, J., and HEBERT, S.J.

ATCHESON, J.: This case plunges us into yet another controversy on how district courts should fashion restitution awards imposed on convicted criminals. A majority of this panel departs from our colleagues' view in *State v. Miller*, 51 Kan. App. 2d 869, Syl. ¶ 2, 355 P.3d 716 (2015), and holds that a defendant convicted of burglary may be ordered to pay restitution for property stolen during the course of the break-in—a result that seems both eminently logical and fully consistent with K.S.A. 2015 Supp. 21-6607(c)(2) by imposing restitution on a defendant for any loss caused by his or her crime of conviction. Judge Leben, as the author of *Miller*, not surprisingly disagrees. On this point, we affirm the restitution order the Riley County District Court entered against Defendant Christopher Scott Futrell arising from a residential burglary.

But the panel unanimously reverses the district court's restitution order with respect to a vehicular break-in unconnected to Futrell's conviction for the residential burglary. We otherwise unanimously affirm the restitution order. Apart from the restitution issues, Futrell does not challenge his conviction and sentence.

## FACTUAL AND PROCEDURAL HISTORY

Because Futrell disputes only the restitution order, we need not recount the details of his criminal conduct. We sketch those circumstances briefly.

Futrell was a disgruntled employee of Ryan Platt. Platt coordinated events, such as concerts and large private parties, and, as a result, often had to briefly hold large amounts of cash. While Platt was closing an event venue on January 31, 2015, someone broke into his SUV and took $6,220 in cash. The damage to the vehicle cost $303.41 to repair. About 3 weeks later, someone burglarized Platt's home and stole his wife's wedding ring and between $600 and $700 in cash. Repairs to the backdoor cost $250.

Platt identified Futrell as a likely suspect in light of their deteriorating work relationship. Law enforcement officers found the stolen wedding ring at Futrell's home. In a single case, the Riley County Attorney charged Futrell with burglary and theft in connection with the loss from Platt's SUV and burglary and theft for the break-in at Platt's house.

The County Attorney charged Futrell with criminal damage to property in a separate case for smashing his then-girlfriend's smartphone. The phone had a market value of about $500.

The County Attorney and Futrell, acting through his lawyer, negotiated a plea agreement. Futrell pled no contest to the burglary of Platt's house, and the State dismissed all of the other charges in both cases. The written plea agreement outlined sentencing recommendations to the district court in anticipation of Futrell receiving probation. As to restitution, the agreement provided that "[t]he issue . . . is open" and that "the State may ask for restitution for the victim" in the criminal damage to property case.

The district court accepted Futrell's plea and later placed him on probation in conformity with the recommendations in the agreement. The district court held an evidentiary hearing on restitution. The testimony conformed to what we have already outlined. So the district court ordered Futrell to pay Platt restitution for the damage to his SUV, the cash taken from the vehicle, the damage to his house, and the cash taken from there. The wedding ring was recovered, apparently undamaged, obviating the need for restitution.

The district court also ordered Futrell to pay $500 to his girlfriend for the destruction of her smartphone. Futrell has timely appealed various aspects of the restitution order.

## LEGAL ANALYSIS

As provided in K.S.A. 2015 Supp. 21-6607(c)(2), a district court placing a criminal defendant on probation "shall order the defendant to . . . make reparation or restitution to the aggrieved party for the damage or loss caused by the defendant's crime." The amount of restitution and how it should be paid largely rest within the district court's discretion and will be reviewed on appeal for abuse of that authority. See *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016). A district court exceeds judicial discretion if it rules in a way no reasonable judge would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

Before turning to the specific issues here, we outline some of the judicial gloss on the statute governing restitution orders. Defendants may be ordered to pay restitution only if the loss has been caused by their crimes of conviction unless they have agreed to pay restitution for crimes that were never charged or have been dismissed. *State v. Dexter*, 276 Kan. 909, Syl. ¶ 3, 80 P.3d 1125 (2003); *State v. Chandler*, No. 107,111, 2013 WL 1234223, at *1-2 (Kan. App. 2013) (unpublished opinion). The Kansas Supreme Court has recognized the language in K.S.A. 2015 Supp. 21-6607(c)(2) does not require a *direct* causal link between the crime and the loss—an indirect connection may be sufficient. In discussing the predecessor to K.S.A. 2015 Supp. 21-6607(c)(2), the court said: "Although not all tangential costs incurred as a result of a crime should be the subject of restitution [citation omitted], there is no requirement that the damage or loss be 'directly' caused by the defendant's crime." *State v. Hall*, 298 Kan. 978, 990, 319 P.3d 506 (2014). It made the same point in *State v. Hand*, 297 Kan. 734, 739, 304 P.3d

1234 (2013) ("[T]he statute's reference to damage or loss 'caused by' a defendant's crime is not modified by the adverb 'directly.'").

Over the past several years, the Kansas Supreme Court has grappled with how district courts may measure a victim's loss, especially for property crimes. See *Hand*, 297 Kan. at 739-40 (premium surcharge insurer assessed victim after he filed claim for stolen property appropriate measure of restitution imposed on criminal defendant rather than fair market value of property); *State v. Hall*, 297 Kan. 709, 709-10, 304 P.3d 677 (2013) (In fashioning a restitution order, the district court may consider either the wholesale cost or retail value of inventory stolen from a commercial enterprise.).

As part of a criminal sentence, restitution serves multiple purposes. It is not intended to be purely or even primarily punitive. Most obviously, of course, restitution provides a vehicle for financial compensation to crime victims for their losses. See K.S.A. 2015 Supp. 21-6607(c)(2); *State v. Cox*, 30 Kan. App. 2d 407, 408-09, 42 P.3d 182 (2002). As to the defendant, restitution aims to rehabilitate and deter rather than strictly to punish. 30 Kan. App. 2d at 409. The payments ideally instill in criminal wrongdoers some sense of the costs their actions have inflicted on others. *State v. Heim*, No. 111,665, 2015 WL 1514060, at *2 (Kan. App.) (unpublished opinion), *rev. denied.* 302 Kan. 1015 (2015). Those functions take on added and more immediate significance where, as here, the district court places a defendant on probation rather than incarcerating him or her. Restitution occupies a place quite different from other components of a sentence imposed on a probationer by providing a calibrated measure of acceptance of responsibility for criminal conduct and of a willingness to reform.

We now look at the restitution issues on which the panel agrees. First, the district court erred in ordering Futrell to pay restitution for the damage and loss associated with the break-in of Platt's SUV. Both of the criminal charges arising from that incident were dismissed. So Futrell was not convicted of any offense related to the SUV. Neither in the plea bargain nor during the plea itself did Futrell agree to be responsible for Platt's losses from that break-in. Consistent with the rule in *Dexter*, Futrell cannot be required to pay restitution based on those dismissed charges. 276 Kan. at

919 ("[A] district court . . . may only order restitution for losses or damages caused by the crime or crimes for which the defendant was convicted unless, pursuant to a plea bargain, the defendant has agreed to pay for losses not caused directly or indirectly by the defendant's crime.").

In *Dexter*, the defendant was charged with seven counts of impairing a security interest related to his disposition of motor vehicles covered by liens. He pled guilty to one count, and the remaining charges were dismissed. The district court imposed restitution measured by the losses to the secured party in all seven counts. On appeal, the Kansas Supreme Court found the restitution order to be legally improper as to the six dismissed counts precisely because the defendant had not been convicted of them and had not agreed to assume financial responsibility for them. *Dexter*, 276 Kan. at 919. With respect to the SUV break-in, Futrell's position is legally and factually indistinguishable from Dexter's. Accordingly, we reverse the restitution order as to the damage to the SUV and the theft of cash from it.

Second, we consider the order of restitution to Futrell's girlfriend for the damage to her smartphone. The underlying charge for criminal damage to property was dismissed as part of the negotiated plea. But Futrell agreed the State could ask for restitution to his girlfriend. By doing so, Futrell effectively acknowledged he would pay restitution in an appropriate amount for the smartphone. That is, he agreed restitution was due his girlfriend and simply reserved the right to a hearing on how much. We contrast the language in Futrell's plea agreement with that in *State v. Hawkins*, No. 114,809, 2016 WL 4499384, at *1 (Kan. App. 2016) (unpublished opinion), where the parties agreed to a hearing on restitution related to a dismissed charge, but Hawkins expressly "'oppose[d] paying restitution.'"[*]

[*]In *Hawkins*, this court found that the agreement to a hearing coupled with the defendant's expressed opposition to paying any restitution on the dismissed charge created either a mutual mistake or a legal impossibility in light of *Dexter*. In other words, Hawkins' opposition to *any* restitution was incompatible with the sort of agreement contemplated in *Dexter*. When the lawyers for

the State and Hawkins negotiated the plea agreement, they were unaware of the rule in *Dexter*. So they incorrectly believed the district court could determine whether restitution were due the victim on the dismissed charge in the face of Hawkins' claim that the victim basically fabricated the underlying incident. At the sentencing hearing, the State and Hawkins effectively reformed the plea agreement with the district court's guidance. Hawkins acknowledged an obligation to pay restitution as to the dismissed charge but reserved the right to challenge the State's evidence as to the amount. *Hawkins*, 2016 WL 4499384, at *1, 6. Here, the language in the plea agreement between the County Attorney and Futrell mirrored what the State and Hawkins ultimately included in their reformed agreement.

Futrell's unqualified agreement that the County Attorney could request restitution really has to be considered an acknowledgement of a legal obligation to pay restitution in some amount. The alternative construction leads to an unreasonable result. If the request were construed to be the County Attorney's unilateral assertion that Futrell owed restitution in some amount for the damaged smartphone—a request that Futrell silently and only implicitly opposed—then the request would be legally meaningless under the rule in *Dexter*. The County Attorney would be asking for a hearing on restitution in a situation in which the district court had no legal authority to grant restitution. But the law supposes parties to a contract intend to exchange promises that impose enforceable legal duties and create enforceable legal rights. See *LDF Food Group, Inc. v. Liberty Mut. Fire Ins. Co.*, 36 Kan. App. 2d 853, 863, 146 P.3d 1088 (2006), *rev. denied* 283 Kan. 931 (2007) (recognizing "well-established" principle that courts should avoid construing contractual language in a way that "render[s] any term meaningless"); *Gilman v. Marsh & McLennan Companies, Inc.*, 826 F.3d 69, 75 (2d Cir. 2016) (courts should not read contracts as to render any part meaningless) (applying Delaware law); *Frew v. Janek*, 820 F.3d 715, 724 (5th Cir. 2016) (same) (applying Texas law). Plea agreements are a species of contract, so they generally should be subject to accepted rules of contract interpretation. *State v. Urista*, 296 Kan. 576, Syl. ¶ 3, 293 P.3d 738 (2013). We find no room for deviation here.

In short, Futrell agreed to pay restitution for his girlfriend's smartphone and reserved the right to challenge the amount. On appeal, he does not dispute that the evidence offered at the hearing supported a $500 loss. We, therefore, unanimously affirm that part of the restitution order.

Turning to the break-in at Platt's home, we first outline the relevant elements of the charges the County Attorney filed against Futrell. The burglary count required the State to prove Futrell entered or remained in the house without Platt's authority and with the intent to commit a theft there. K.S.A. 2015 Supp. 21-5807(a)(1). The dismissed theft count required proof that Futrell "exert[ed] unauthorized control over property" with the intent to permanently deprive Platt of possession. K.S.A. 2015 Supp. 21-5801(a)(1). Everyone, including Futrell, agrees he was properly ordered to pay $250 in restitution for the damage to the backdoor of Platt's house, where he forced his way in during the burglary. We unanimously affirm that part of the order. The point of contention pivots on the $600 to $700 in cash that was taken during the break-in.

Relying on *Miller*, 51 Kan. App. 2d 869, Syl. ¶ 2, Futrell contends the loss of the cash is insufficiently connected to the burglary—in contrast to the dismissed theft charge—to support that aspect of the restitution order. Futrell correctly reads *Miller*. And were we to apply *Miller*, he would prevail on this point. But we are not obligated to follow *Miller*. See *State v. Urban*, 291 Kan. 214, 223, 239 P.3d 837 (2010) (one panel of the Court of Appeals is not bound to follow a published opinion of another panel). As I explain, Judge Hebert and I do not. The two of us choose, instead, what looks to be a more sensible path consistent with both the law and the purposes underpinning restitution.

In *Miller*, the court held that because burglary requires only an *intent* to commit a theft and not an actual taking of property, a defendant convicted of burglary alone could not be ordered to pay restitution for anything taken during the course of a break-in. 51 Kan. App. 2d at 874. The *Miller* holding rests on the idea that the crime of burglary ends as soon as a defendant both enters a building and decides to steal something—satisfying the statutory elements—and whatever happens after that is a theft or some other

crime. As far as the State's required proof to get a conviction at trial, that's essentially true. A defendant could be convicted of burglary for entering a place with the intent to steal, even though he or she then found nothing to his or her liking and left emptyhanded.

But the rules governing restitution do not limit a victim's recovery for losses caused by a crime in that narrow way. In effect, *Miller* cuts off causation as soon as the elements of the crime have occurred without considering the consequences of the continuing criminal activity. Under the rule in *Miller*, the theft, then, operates as an independent intervening event disrupting the legal causation necessary to support a restitution award for the loss of the stolen property. That would be true here, even though Futrell harbored an intent to steal as a necessary element of the burglary and then acted immediately on that intent to take the wedding ring and cash. Any causal break seems, at best, artificial.

But a restitution order entered under K.S.A. 2015 Supp. 21-6607(c)(2) does not demand the kind of formalistic connection between the precise elements of the crime of conviction and the loss to the victim that *Miller* imagines. As the Kansas Supreme Court has recognized, an indirect causal association is legally sufficient. See *Hand*, 297 Kan. at 739-40. The circumstances in *Hand* are instructive. Hand entered a plea and was convicted of stealing a big-screen television. The victim filed a claim under his renter's insurance policy for the loss and had been paid by the insurance company. The company then imposed a premium surcharge on the victim that exceeded the fair-market value of the television. The district court based the restitution award to the victim on the surcharge rather than the value of the television. The court upheld the restitution order, since Hand's criminal conduct indirectly caused the surcharge, although the immediate cause was the victim's independent decision to submit an insurance claim for the loss. 297 Kan. at 738-40. A victim's decision to submit an insurance claim would seem to be more of an intervening (and independent) cause than a burglar's decision to act on his or her intent to steal.

So here, Futrell's burglary was, analogously, at the very least an indirect cause of Platt's loss of the $600 taken from his house. The burglary and the theft composed a single criminal undertaking and

were immediately linked in both time and place. The burglary was a necessary factual precursor to the theft—absent the break-in itself Futrell would not have been in a position to steal the money. Accordingly, the burglary was sufficiently tied causally to the property loss to support the restitution award, as required by K.S.A. 2015 Supp. 21-6607(c)(2). In keeping with the policy objectives of restitution, Platt ought to be made whole for what factually amounts to a discrete criminal venture directed at him, and Futrell should be made to feel the full retributive sting of the harm he inflicted.

We think an appropriate rule of restitution permits an order encompassing losses to a particular victim arising from criminal actions immediately aligned in time and place, as are the burglary and the theft in this case. Doing otherwise robotically draws a line based on strict elements of criminal offenses inconsistent with the somewhat looser causal requirements of K.S.A. 2015 Supp. 21-6607(c)(2).

In at least some circumstances, the *Miller* rule would foster peculiar results incompatible with the legislative purpose behind restitution. For example, suppose Futrell first attempted to break into Platt's house through the front door but found it unusually resistant to his efforts. So he left the door heavily damaged but ultimately unyielding and turned to the less fortified backdoor to get in. Although Futrell would not have breached the front door, the burglary conviction ought to support a restitution order including the cost of its repair. That should be true even though the damage to the front door would not strictly satisfy an element of a burglary charge.

Similarly, some crimes don't necessarily end as soon as the perpetrator has satisfied all of the legal elements. Again, for example, suppose a criminal defendant repeatedly stabbed another person with a large knife, inflicting fairly superficial injuries with the first several blows and an injury requiring significant (and expensive) medical treatment with the final blow. The defendant pleads guilty to aggravated battery for causing bodily harm to another person with a deadly weapon, a severity level 7 felony violation of K.S.A. 2015 Supp. 21-5413(b)(1)(B). The elements of that crime would be satisfied with the initial blow to the victim, but the rest of the blows

could not be charged separately—that would be multiplicitous. See *State v. Mendoza*, 41 Kan. App. 2d 996, 997, 207 P.3d 1072 (2009). The rule in *Miller* arguably would preclude restitution to the victim for most of the medical expenses unless it extends beyond the statutory elements to the unit of prosecution. As a practical matter and certainly for restitution purposes, the entire criminal episode ought to be considered. Or take the robber who points a pistol at a woman and demands her purse. She complies. But as the robber turns and takes several steps in his getaway, the victim grabs at his arm. The robber then strikes the victim across the face with the handgun, inflicting a significant injury. The aggravated robbery may have been completed when the perpetrator took the purse. So he would be liable for the resulting economic loss to the victim. But the physical injuries to the victim may be the result of an aggravated battery immediately following the robbery. If so, *Miller* would preclude restitution to the victim for those injuries based solely on an aggravated robbery charge or conviction. A restitution order shouldn't turn on those kinds of legal abstractions. The physical injuries would be sufficiently associated with the robbery to satisfy the causation requirement of K.S.A. 2015 Supp. 21-6607(c)(2), especially as described in *Hand* and *Hall*.

As with other applications of causation, however, a defendant's criminal conduct may be sufficiently attenuated from a victim's claimed loss so as to be outside the scope of a proper restitution order. See *Hall*, 298 Kan. at 990 ("not all tangential costs incurred as a result of a crime should be the subject of restitution"); *State v. Hunziker*, 274 Kan. 655, 667-68, 56 P.3d 202 (2002) (victim's expense in retaining lawyer to explore means of recovering economic losses from criminal defendant and to prepare "restitution booklet" should have been excluded from restitution order as insufficiently connected to convictions for criminal damage to property and theft). Here, attenuation is not an issue. But it was in *State v. Arnett*, No. 112,572, 2015 WL 6835244 (Kan. App. 2015) (unpublished opinion), which Judge Leben cites in his separate opinion. In that case, Arnett pled guilty to conspiracy to commit burglary for loaning her mother's car to her boyfriend knowing that he and

his cohorts intended to break into houses and take saleable property from them. She did not otherwise have anything to do with the break-ins. The panel reversed a restitution order based on the homeowners' losses because "there is no causal connection between Arnett's crime of conviction—conspiracy—and the amounts for which she was ordered to make restitution—the fruits of burglary, theft, and criminal damage to property." 2015 WL 6835244, at *2. The panel effectively found the crime of conviction to be too attenuated from the losses to satisfy K.S.A. 2015 Supp. 21-6607(c).

In some cases, the line between permissibly proximate restitution and losses too remote to be allowed may not be drawn easily. And *Arnett* may fall closer to that line than most. The *Miller* decision provides a wooden rule that might simplify some of those cases but at too substantial a cost in a great many other cases. Of course, in any case resolved through plea negotiations, the State and the defendant may eliminate uncertainty about restitution by including clearly drafted terms in a written agreement.

As to Futrell's conviction for the burglary of Platt's home, we find the district court properly included the stolen cash in the restitution order. The loss is sufficiently connected factually and legally to the crime of conviction to be covered under K.S.A. 2015 Supp. 21-6607(c)(2).

We, therefore, affirm the district court's restitution order except for the losses resulting from the burglary and theft from Platt's motor vehicle. We reverse as to those losses and find as a matter of law Futrell cannot be required to pay restitution for them. All of the associated charges were dismissed, and Futrell did not agree to pay restitution.

Affirmed in part and reversed in part.

* * *

LEBEN, J., concurring in part and dissenting in part: I disagree with one part of the majority opinion, so I write separately to explain that disagreement. To refresh the reader's memory, Futrell was convicted of residential burglary and is challenging the district court's restitution order, which required him to pay a total of $7,953.41 based on five losses the State claimed had been caused

by his crimes: (1) $303.41 for damage to Platt's car; (2) $6,220 for cash stolen from Platt's car; (3) $250 for damage to the door of Platt's home; (4) $680 for cash stolen from Platt's home; and (5) $500 for damage to Futrell's ex-girlfriend's phone. I concur with the majority's reasoning and decision to reverse the restitution order regarding items (1) and (2) and to affirm the restitution order regarding items (3) and (5). But unlike the majority, I don't think that the district court had the authority to include item (4)—the cash stolen from Platt's home—in the restitution award. On that point, I must dissent.

When the district court places a defendant on probation, the criminal restitution statute authorizes the court to order the defendant to pay restitution "to the aggrieved party for the damage or loss caused by the defendant's crime." K.S.A. 2015 Supp. 21-6607(c)(2). The Kansas Supreme Court has said that under this statute, the district court "may only order restitution for damages caused by the crime or crimes *for which the defendant was convicted*." (Emphasis added.) *State v. Dexter*, 276 Kan. 909, 919, 80 P.3d 1125 (2003) (interpreting identical language in an earlier version of this statute). In other words, the statutory phrase "the defendant's crime" means "the crime or crimes for which the defendant was convicted." See 276 Kan. at 919. Additionally, the statutory phrase "caused by" means that there must be a nexus between the crime or crimes of conviction and the conduct for which restitution was imposed—the loss or damage must "be caused by, not merely connected to, the crime of conviction." 276 Kan. at 918; *State v. Hall*, 30 Kan. App. 2d 746, 750, 49 P.3d 19 (2002).

Our court's opinion in *State v. Miller*, 51 Kan. App. 2d 869, 355 P.3d 716 (2015), followed these rules. There, the defendant was convicted of theft and burglary, and the district court imposed a restitution order of $4,700 for plumbing and electrical repairs to the home where the theft and burglary took place. The plumbing and electrical repairs were needed because some of the home's copper piping had been stolen out of the walls. But Miller's theft conviction wasn't for stealing the copper piping—it was for stealing a machete and baby powder—so the damage to the walls wasn't caused by the theft conviction. And the burglary conviction

simply required the unauthorized entering into or remaining within a dwelling with the *intent* to commit a theft, not an *actual* theft, so the theft of the copper piping wasn't caused by that conviction either. 51 Kan. App. 2d at 873-74. The loss of the copper piping was certainly *connected* to the burglary, but the burglary didn't *cause* it. 51 Kan. App. 2d at 874; see *Dexter*, 276 Kan. at 918. Thus, following the rule that the district court can only order restitution for loss or damage caused by (and not merely connected to) the crime or crimes for which a defendant is actually convicted, our court reversed the restitution order because the defendant hadn't been convicted for stealing the copper piping. *Miller*, 51 Kan. App. 2d at 874; see *State v. Butts*, No. 114,475, 2016 WL 4585604 (Kan. App. 2016) (unpublished opinion) (following *Miller* and holding that a defendant convicted of theft for stealing a dog couldn't be required to pay restitution to the dog's owners for their loss related to the interest and finance charges that had accrued on the contract under which they had originally purchased the dog).

In *State v. Arnett*, No. 112,572, 2015 WL 6835244 (Kan. App. 2015) (unpublished opinion), our court followed the reasoning in *Miller*. There, the defendant had lent her car to her boyfriend, who used the car to commit several residential burglaries, causing losses of $33,248.83. The defendant was convicted of conspiracy to commit burglary, and the district court imposed a restitution order holding her jointly and severally liable for the entire amount of the loss. The *Arnett* court reversed the restitution order, noting that the crime of conspiracy doesn't require actually committing the crime the person conspired to commit and that the defendant hadn't been convicted of burglary or theft. The court held that while the defendant's action in lending her car was connected to the losses, the defendant's actual crime of conviction—conspiracy—didn't cause them (the thefts and burglaries did). 2015 WL 6835244, at *2. This is simply an application of the rule in *Miller*: there, the burglary conviction didn't require the completion of a theft, so the burglary conviction didn't cause the need for repairs to the walls (the uncharged conduct of stealing the copper piping did).

Applying *Miller*'s reasoning to this case, Futrell's crime of conviction—burglary—was merely connected to and didn't cause the

loss of the cash, and the majority acknowledges that if it were to follow *Miller*, it would reverse the restitution order for the cash stolen from Pratt's home. 53 Kan. App. 2d at 278.

But the majority rejects that result, and in doing so, it effectively expands the meaning of "the defendant's crime" beyond the definition provided in *Dexter*— "the crime or crimes for which the defendant was convicted"—to include any "criminal actions immediately aligned in time and place" or "the entire criminal episode." 53 Kan. App. 2d at 280-81. To get to this expanded definition, the majority overlooks *Dexter's* interpretation of the restitution statute and focuses instead on the factual progression of criminal activity, arguing that victims should be compensated for losses caused by the entire criminal episode, regardless of the defendant's actual convictions.

The majority concludes that, in this case, stealing the money was an indistinguishable part of the burglary, aligned in time and place, so the district court had the authority to order restitution for the stolen money because the burglary indirectly caused the loss of the money. And it is true that restitution can include indirect losses that were nonetheless caused by a crime. For example, in *State v. Hand*, 297 Kan. 734, 304 P.3d 1234 (2013), the defendant stole the victim's television, and when the victim filed a renters'-insurance claim for that loss, the insurance company increased the victim's monthly premium. On appeal, the Kansas Supreme Court affirmed the district court's restitution order that included the amount of the insurance-premium increase. But the defendant in *Hand* was actually convicted for stealing the television (as well as for burglary), so the statutory requirement that the loss be caused by the crime of conviction had been met. 297 Kan. at 739-40. The *Hand* court held that indirect losses like insurance-premium increases can be included in restitution orders, but this factual question about whether the crime had actually caused the loss in question wouldn't have come up if the defendant hadn't been convicted for stealing the television. The majority here essentially ignores the statutory requirement that the district court can only order restitution for losses caused by the crimes for which the defendant is actually convicted and moves straight into the factual question

of whether the criminal activity caused the loss. This move, while consistent with the broad purpose of restitution to compensate victims of crimes, departs from the plain language of the statute and controlling caselaw that governs what kinds of restitution a district court can impose on a defendant being placed on probation. I would follow *Miller*'s application of K.S.A. 2015 Supp. 21-6607(c) (2) and *Dexter* and reverse the portion of the restitution order related to the money stolen from Pratt's house.