NOT DESIGNATED FOR PUBLICATION

No. 116,324

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TRACY EUGENE MCKEE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; BILL L. KLAPPER, judge. Opinion filed August 4, 2017. Vacated in part and remanded with directions.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Kayla Roehler*, assistant district attorney, *Mark A. Dupree, Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., LEBEN, J., and PATRICIA MACKE DICK, District Judge, assigned.

*Per Curiam*:  Tracy Eugene McKee appeals the district court's order requiring him to pay $2,645.17 in restitution following his conviction for one count of burglary. McKee claims (1) the district court erred by ordering him to pay restitution for losses not caused by his crime of conviction, (2) there is no evidence in the record to support the amount of restitution ordered by the district court, (3) the amount of restitution should have been based on the items' fair market value rather than their replacement costs, and (4) the journal entry of judgment misstates the amount of restitution ordered by the court.

1

On June 3, 2014, Tamara London reported to law enforcement that her 2000 Chevrolet Tahoe had been broken into while parked in a University of Kansas Medical Center parking garage in Kansas City, Kansas. Investigation revealed damage to the Tahoe's driver's side window and door; London also advised that numerous items were missing from inside the vehicle, including a JVC stereo/DVD player/TV, an amplifier, and 30 to 40 DVDs.

The State later charged McKee with one count each of burglary and theft. Under a plea agreement, McKee agreed to plead guilty to burglary in exchange for dismissal of the theft charge. McKee also agreed to pay "appropriate restitution." The district court accepted McKee's plea and found him guilty of burglary.

At sentencing, the State requested that the district court order McKee to pay restitution in an amount of $2,645.73, to be divided as follows: $500 to London and the remainder to State Farm Insurance. The State did not present the testimony of any witnesses or introduce into evidence any documentation to provide a basis for the requested amount of restitution. McKee objected to the amount requested by the State on grounds that (1) London had provided conflicting statements as to the number of DVDs that were taken from her vehicle and (2) the amount was based on the replacement cost of the items rather than their fair market value. McKee conceded that the value of the stolen items would be at least $500 and suggested that the court order that amount and allow State Farm to file a civil claim against McKee for the remainder.

The district court ultimately sentenced McKee to 10 months in prison, concurrent to his sentence in a Missouri case. The court also ordered McKee to pay $2,645.17 in restitution, with $500 going to London and $2,145.17 going to State Farm. The journal entry of judgment listed the restitution amount as $2,645.71.

ANALYSIS

On appeal, McKee raises several issues relating to the district court's restitution order. First, he argues the district court erred by ordering him to pay restitution for losses not caused by his crime of conviction. Second, McKee argues there is no evidence in the record to support the amount of restitution ordered by the district court. Third, he argues that the amount of restitution should have been based on the items' fair market values rather than their replacement costs. Fourth, he argues that the journal entry of judgment misstates the amount of restitution ordered by the court. Because resolution of the first two issues renders the third and fourth issues moot, we resolve only the first two issues in this memorandum opinion.

An appellate court's consideration of a restitution order can involve three standards of review:

> "'Questions concerning the "amount of restitution and the manner in which it is made to the aggrieved party" are reviewed under an abuse of discretion standard. [Citation omitted.] A district court's factual findings relating to the causal link between the crime committed and the victim's loss will be affirmed if those findings are supported by substantial competent evidence. Finally, appellate courts have unlimited review over legal questions involving the interpretation of the underlying statutes.' [Citations omitted.]" *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016).

Under K.S.A. 2016 Supp. 21-6604(b)(1), a sentencing court imposing a prison sentence is required to "order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime." McKee argues the district court erred by ordering him to pay restitution for losses not caused by his crime of conviction. Specifically, McKee argues that he is not liable for the loss associated with items taken from the Tahoe because he was not convicted of the crime of theft.

Initially, the State notes that McKee did not raise this specific argument below. Indeed, while McKee challenged the amount of restitution requested by the State, he did not specifically object to it on grounds that the restitution sought was not for his crime of conviction. Generally, issues not raised before the district court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). But there are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the district court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). McKee acknowledges his failure to raise this specific issue before the district court, but he asserts that either of the first two exceptions apply to justify this court's review.

McKee first argues that the issue of whether the district court complied with the restitution statute—by ordering restitution not caused by the crime of conviction—raises a purely legal question that, if resolved in his favor, is finally determinative of the case. The State responds that this issue is not purely legal in nature because it involves a factual question as to whether the restitution awarded to State Farm was solely for the items stolen from the Tahoe, *i.e.*, damages relating to theft, or if it also included an award for damage to the Tahoe itself, *i.e.*, damages relating to burglary. But the record reflects that at least part of the restitution order related to the items stolen from the Tahoe and not from damage to the Tahoe itself; thus, we may consider whether this loss was properly included in the restitution order.

A district court "may only order restitution for losses or damages caused by the crime or crimes for which the defendant was convicted unless, pursuant to a plea bargain, the defendant has agreed to pay for losses not caused directly or indirectly by the

4

defendant's crime." *State v. Dexter*, 276 Kan. 909, 919, 80 P.3d 1125 (2003). As such, "'restitution for a victim's damages or loss depends on the establishment of a causal link between the defendant's unlawful conduct and the victim's damages.' [Citation omitted.]" 276 Kan. at 912. But "there is no requirement that the damage or loss be 'directly' caused by the defendant's crime." *State v. Hall*, 298 Kan. 978, 990, 319 P.3d 506 (2014); see *State v. Hand*, 297 Kan. 734, 739, 304 P.3d 1234 (2013) ("[T]he statute's reference to damage or loss 'caused by' a defendant's crime is not modified by the adverb 'directly.'").

Relying primarily on this court's opinion in *State v. Miller*, 51 Kan. App. 2d 869, 355 P.3d 716 (2015), McKee contends the items stolen from the Tahoe are insufficiently connected to his conviction for burglary. Specifically, McKee argues he was not convicted for theft of these items and did not otherwise agree to pay for their loss. In *Miller*, the defendant pled guilty to burglary of a vacant house and to theft of a machete and baby powder once inside. The district court's restitution order included monetary compensation to the victim for stolen copper piping, causing plumbing damage, and for stolen copper wiring, causing electrical damage. On appeal, a panel of this court vacated the order of restitution because the plumbing and electrical damage sustained by the victim were not a direct result of the crimes for which the defendant was actually convicted. The panel reasoned that because burglary only requires an intent to commit a theft and not an actual taking of property, the defendant's act of burglary did not cause the loss of copper piping or wiring; only the act of theft would cause the loss, and the defendant was neither charged with nor convicted of theft of the copper items. 51 Kan. App. 2d at 873-74.

But the State points out that a panel of this court recently disagreed with the *Miller* analysis in *State v. Futrell*, 53 Kan. App. 2d 272, 387 P.3d 176 (2016), *petition for rev. filed* January 9, 2017. In *Futrell*, the defendant entered a no contest plea to residential burglary in exchange for the dismissal of other charges, including theft. The district court ordered the defendant to pay restitution, in part, for cash taken from the residence.

5

On appeal, the defendant relied on *Miller* to argue that the loss of cash was insufficiently connected to the burglary charge and, therefore, did not support that aspect of the restitution order. But the majority of the panel members in *Futrell* declined to follow *Miller*, holding that the district court properly included the stolen cash in the restitution order because the loss was sufficiently connected, both factually and legally, to the crime of conviction. *Futrell*, 53 Kan. App. 2d at 282. Specifically, the majority stated:

"The *Miller* holding rests on the idea that the crime of burglary ends as soon as a defendant both enters a building and decides to steal something—satisfying the statutory elements—and whatever happens after that is a theft or some other crime. As far as the State's required proof to get a conviction at trial, that's essentially true. A defendant could be convicted of burglary for entering a place with the intent to steal, even though he or she then found nothing to his or her liking and left emptyhanded.

"But the rules governing restitution do not limit a victim's recovery for losses caused by a crime in that narrow way. In effect, *Miller* cuts off causation as soon as the elements of the crime have occurred without considering the consequences of the continuing criminal activity. Under the rule in *Miller*, the theft, then, operates as an independent intervening event disrupting the legal causation necessary to support a restitution award for the loss of the stolen property. That would be true here, even though Futrell harbored an intent to steal as a necessary element of the burglary and then acted immediately on that intent to take the . . . cash. Any causal break seems, at best, artificial.

. . . .

"So here, Futrell's burglary was, analogously, at the very least an indirect cause of [the victim]'s loss of the $600 taken from his house. The burglary and the theft composed a single criminal undertaking and were immediately linked in both time and place. The burglary was a necessary factual precursor to the theft—absent the break-in itself Futrell would not have been in a position to steal the money. Accordingly, the burglary was sufficiently tied causally to the property loss to support the restitution award, as required by K.S.A. 2015 Supp. 21-6607(c)(2)." 53 Kan. App. 2d at 278-80.

Relevant here, Judge Leben dissented on this point, arguing that the majority's holding ignored the statutory requirement that the district court may only order restitution

for losses caused by the crimes for which the defendant is actually convicted. Applying *Miller*'s reasoning, Judge Leben would have reversed that portion of the restitution order relating to the lost cash because the defendant's burglary conviction was merely connected to, and not the cause of, the loss of cash. 53 Kan. App. 2d at 282-86 (Leben, J., concurring in part and dissenting in part).

In both *Miller* and *Futrell*, the district court ordered restitution as a condition of probation under 21-6607(c)(2), which allows a court to order restitution "for the damage or loss caused by the defendant's crime" as a condition of probation. See *Miller*, 51 Kan. App. 2d at 872; *Futrell*, 53 Kan. App. 2d at 274. But in this case, the district court ordered restitution under K.S.A. 2016 Supp. 21-6604(b)(1), which requires a sentencing court imposing a prison sentence to "order the defendant to pay restitution, *which shall include, but not be limited to*, damage or loss caused by the defendant's crime." (Emphasis added.) Our Supreme Court has read the previous versions of both statutes as mandating that "'restitution for a victim's damages or loss depends on the establishment of a causal link between the defendant's unlawful conduct and the victim's damages.' [Citation omitted.]" *Dexter*, 276 Kan. at 912. With that said, however, the language in K.S.A. 2016 Supp. 21-6604(b)(1) is certainly broader than that in K.S.A. 2016 Supp. 21-6607(c)(2). Given this greater breadth, the language in K.S.A. 2016 Supp. 21-6604(b)(1) arguably could be read to permit restitution for a loss caused indirectly by a defendant's actions, rather than by the defendant's crimes of conviction, as contemplated by the *Futrell* majority. But see *Miller*, 51 Kan. App. 2d at 872 (although K.S.A. 2014 Supp. 21-6604[b][1] is "somewhat open-ended in its definition," K.S.A. 2014 Supp. 21-6604[b][1] and K.S.A. 2014 Supp. 21-6607[c][2] were "enacted together as part of the revised Kansas Criminal Code, are closely related, and should be construed together"). So, notwithstanding the difference in language, we agree with the conclusion reached in *Miller* that, pursuant to K.S.A. 2016 Supp. 21-6604(b)(1), the district court may only order restitution for losses caused by the crimes for which the defendant is actually convicted.

Here, McKee was convicted of burglary. Like the court reasoned in *Miller*, burglary only requires an intent to commit a theft and not an actual taking of property. Under the reasoning set forth in *Miller*, McKee's act of burglary did not cause the loss of the property taken from inside the Tahoe; only the act of theft would cause that loss. But McKee was not convicted of theft because the State dismissed that charge as part of the plea agreement. Accordingly, we vacate the order of restitution and remand the matter with directions for the district court to hold an evidentiary hearing for purposes of determining the amount of restitution McKee must be ordered to pay. In making this determination, the court should consider only the damage or loss incurred by the victim as a result of McKee's burglary conviction (*e.g.*, damage to the Tahoe) and should not consider the loss of any property taken from inside the Tahoe (theft).

Finally, we reiterate that, although the amount of restitution is determined at the discretion of the district court, there must be evidence in the record to support its determination of the amount of restitution. *Shank*, 304 Kan. at 93. "'Although the rigidness and proof of value that lies in a civil damage suit does not apply in a criminal case, the court's determination of restitution must be based on reliable evidence which yields a defensible restitution figure.'" *State v. Hunziker*, 274 Kan. 655, 660, 56 P.3d 202 (2002) (quoting *State v. Casto*, 22 Kan. App. 2d 152, 154, 912 P.2d 772 [1996]). In *State v. Cole*, 37 Kan. App. 2d 633, 636-37, 155 P.3d 739 (2007), the district court based an order of restitution solely on the prosecutor's representations, as there was no evidence in the record to support the restitution figure. Our court held: "Statements of counsel are not evidence. . . . The trial court's entry of the order of restitution without any evidence to support it constitutes an abuse of discretion." 37 Kan. App. 2d at 637. Here, just as in *Cole*, there was no evidence to support the restitution amount McKee was ordered to pay, and it appears the district court improperly based its restitution order solely on the statements of the prosecutor. The State concedes that there is no evidence in the record to support the district court's restitution order. Therefore, on remand, the district court should verify its decision is supported by evidence in the record.

Order of restitution vacated and matter remanded with directions for recalculation of restitution based on testimonial or documentary evidence and consideration of only damage or loss caused by McKee's burglary conviction.