NOT DESIGNATED FOR PUBLICATION

No. 116,614

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRADLEY S. STANLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ottawa District Court; RENE S. YOUNG, judge. Opinion filed December 22, 2017. Affirmed in part, vacated in part, and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., GREEN, J., and MERYL D. WILSON, District Judge, assigned.

PER CURIAM: Bradley S. Stanley pleaded no contest to the charges stemming from his aggravated battery of Trisha Womack. The district court ordered Stanley to pay restitution to Womack in the amount of $5,683.19, which included medical bills from Womack's visit to the emergency room 12 days later, on August 26, 2015. Stanley appeals the district court's restitution order, arguing: (1) the State failed to prove causation between his aggravated battery of Womack and her treatment on August 26, 2015; and (2) the restitution order was miscalculated. We affirm in part, reverse in part, and remand with directions to enter an order of restitution in the amount of $5,468.19.

1

*Factual and Procedural Background*

In the early hours of August 14, 2015, Womack was receiving treatment at the Ottawa County Health Center after being beaten by her boyfriend at the time, Stanley. When Deputy Aaron Zeigler arrived at the hospital, he was initially unable to recognize Womack due to the bruising and swelling of her face. In assessing Womack, Zeigler noted her nose was bleeding, her mouth had blood around it, and there was bruising on her arms, ears, chest, face, and neck. Zeigler also reported that Womack told nurses her head hurt badly and it felt like she had a migraine. Womack told Zeigler that Stanley had inflicted the injuries by beating her for approximately four hours. Later that day, Stanley was arrested.

At the preliminary hearing, Womack testified that she and Stanley got in an argument, and after she went to bed Stanley started beating her. Stanley had held Womack's arms down and was choking her with his hand around her throat to the point where Womack believed she was going to blackout. Stanley repeatedly punched Womack in the head, as well as other areas of her body, and threatened to kill Womack and then kill himself. When Womack would try to escape, Stanley would grab her hair and continue to beat her. Womack estimated the beating lasted about four hours. Eventually, Womack was able to get to the hospital after Stanley passed out. At the hospital, Womack was informed that she received a concussion. When asked if she had any lingering injuries, she stated that she had a "mild traumatic brain injury."

Pursuant to a plea agreement, Stanley pleaded no contest to criminal restraint, aggravated battery, and criminal threat. The district court sentenced Stanley to 29 months in prison for aggravated battery, 7 months in prison for criminal threat, and 12 months in the county jail for criminal restraint. The district court ordered the jail sentence be served but suspended the prison sentences. Stanley was placed on probation for the counts of aggravated battery and criminal threat, which was to be served after the jail sentence. The

State sought restitution for mental health costs and $5,512.81 in medical bills. Stanley objected to the amount of $5,512.81 in medical bills, and the district court continued sentencing as to that issue.

At the hearing on restitution, Stanley did not contest paying the agreed upon $946.38 in restitution to Womack for her treatment on August 14, 2015, which included $917.38 for treatment from Ottawa County Health Center and $29 for an x-ray from United Radiology. However, Stanley contested restitution sought for Womack's later emergency room bill on August 26, 2015, and her request of $234 for three days of lost wages.

Womack was the sole witness at the restitution hearing, and her testimony was uncontroverted. Womack testified the medical bill on August 26, 2015, came from an emergency room visit and stemmed from issues regarding her concussion. Womack's request for $234 of lost wages came from missing work after the emergency room visit on August 26 until September 1, when she was allowed to go back to work. After her treatment on August 14, Womack was told she could go back to work the following Monday. However, Womack testified that after receiving treatment on August 14, the doctors told her "if anything happened or if I had any other symptoms that I was supposed to go to the hospital." Womack also received discharge documents stating she was to "get help right away" if she had future problems.

Womack testified that on August 26, she was still in pain and recovering from the concussion she received on August 14. While at work on August 26, Womack "started getting severe neck pain and arm pain and a headache." Womack stated she "almost blacked out" and at that point she went to the emergency room. Prior to August 14, 2015, when Womack was beaten, she did not have problems with blackouts or headaches. Womack also did not sustain any kind of trauma to her head between August 14 and

3

August 26. Ultimately, in Womack's opinion, all the restitution amounts requested stemmed from the injuries she sustained on August 14, 2015.

At the conclusion of the restitution hearing, the district court found Womack's testimony to be credible. The district court then found:

> "[T]he treatment that [Womack] received on August 26th of 2015 relating to the concussion and the mental health treatment that she received subsequently . . . was reasonably and was directly related, and was reasonable, reasonably related to the injuries that she had sustained back on August 14th of 2015 as a result of the battery by the defendant."

As a result, the district court ordered restitution in the sum requested by the State for the amounts of $234 in lost wages and $5,449.19 for medical treatment, which also included the amounts for her mental health treatments.

Stanley appeals, challenging the restitution order. On appeal, Stanley argues (1) the district court erred in ordering Stanley to pay restitution for Womack's medical expenses and lost wages incurred on and after August 26, 2015; and (2) the district court erred in ordering Stanley to pay $5,449.19 in restitution for medical expenses because the amounts submitted by the State did not add up to that amount.

*The District Court Did Not Err in Ordering Stanley to Pay Restitution for Womack's Medical Expenses and Lost Wages Incurred on and after August 26, 2015.*

Stanley first contends the district court erred in ordering him to pay restitution for Womack's medical expenses and lost wages incurred on and after August 26, 2015. In addition, Stanley argues that the State failed to produce evidence of causation between his aggravated battery of Womack on August 14, 2015, and why she went to the emergency room on August 26, 2015. However, we disagree and find (1) the district

4

court's finding of causation is supported by substantial competent evidence; (2) the State was not required to produce expert medical testimony to prove causation between Stanley's aggravated battery and Womack's symptoms occurring on August 26, 2015, which resulted in additional medical bills and lost wages; and (3) at a restitution hearing a victim may testify as to his or her own injuries and the cause of those injuries.

*The district court's finding of causation is supported by substantial competent evidence.*

As provided in K.S.A. 2016 Supp. 21-6607(c)(2), a district court placing a criminal defendant on probation "shall order the defendant to . . . make reparation or restitution to the aggrieved party for the damage or loss caused by the defendant's crime." "'[R]estitution for a victim's damages or loss depends on the establishment of a causal link between the defendant's unlawful conduct and the victim's damages.'" *State v. Hall*, 298 Kan. 978, 990, 319 P.3d 506 (2014) (quoting *State v. Goeller*, 276 Kan. 578, 580-81, 77 P.3d 1272 [2003]). "Although not all tangential costs incurred as a result of a crime should be the subject of restitution, . . . there is no requirement that the damage or loss be 'directly' caused by the defendant's crime. [Citation omitted.]" *Hall*, 298 Kan. at 990.

"A district court's factual findings relating to the causal link between the crime committed and the victim's loss will be affirmed if those findings are supported by substantial competent evidence." *State v. King*, 288 Kan. 333, 354-55, 204 P.3d 585 (2009). Substantial competent evidence is "such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *State v. Luna*, 271 Kan. 573, 575, 24 P.3d 125 (2001).

In *Hall*, the Kansas Supreme Court found a victim's relocation expenses were fairly regarded as caused by a defendant's crime of attempted rape to support a restitution award for the victim's relocation expenses. 298 Kan. at 991. The *Hall* court concluded

5

that the award was supported by substantial competent evidence when there was evidence that the victim suffered physical injuries, the attacker worked and resided at the victim's apartment complex, and police told her to relocate for her safety and to avoid possible harm. 298 Kan. at 991.

Similarly, in *State v. Reinhard*, No. 112,879, 2015 WL 5311847, at *2 (Kan. App. 2015) (unpublished opinion), the court found a victim's relocation expenses were sufficiently caused by a defendant's crime of criminal damage to property to support a restitution award for the victim's relocation expenses. The *Reinhard* court found that even though the victim's move was influenced by other violence-based behavior, the award was supported by substantial competent evidence when the victim said he moved to keep his family safe and he moved at the start of the month following the crime. 2015 WL 5311847, at *2.

Here, there was substantial competent evidence that the aggravated battery on August 14, 2015, caused Womack's expenses on August 26, 2015. Like the victim who was advised to relocate in *Hall*, Womack's medical expenses on August 26 were recommended for her welfare; Womack was told to go to the hospital and get help right away if she had any other symptoms or if anything else happened. Womack testified that on August 26 she was still suffering the consequences of the aggravated battery by Stanley which included bruising, pain, and recovery from her concussion. On August 26, Womack felt like she almost blacked out and "started getting severe neck pain and arm pain and a headache." The evidence shows Womack did not have these problems before the aggravated battery on August 14 and nothing occurred between the aggravated battery on August 14 and her symptoms on August 26.

Moreover, the aggravated battery and injuries suffered on August 14 were not distinct in both the nature and temporal proximity to her symptoms on August 26. Like the timing of the victim's relocation in *Reinhard*, the temporal proximity between

6

Stanley's aggravated battery of Womack and her symptoms on August 26 support a finding of causation. Albeit 12 days after the aggravated battery, Womack's symptoms on August 26 were similar to those occurring on August 14 when she suffered a concussion; she had a severe headache and was almost blacking out. Also, Womack's symptoms on August 26 occurred in areas where she was repeatedly beaten and strangled by Stanley. As such, the evidence presented was such legal and relevant evidence as a reasonable person might accept as being sufficient to support the conclusion that the aggravated battery occurring on August 14 was the cause of Womack's symptoms requiring hospitalization on August 26. Therefore, substantial competent evidence supports the district court's award of restitution for the medical bills and lost wages as a result of her symptoms on August 26.

> *Expert medical testimony was not required to establish causation between Stanley's crimes and Womack's symptoms occurring on August 26, 2015, which resulted in additional medical bills and lost wages.*

Stanley concedes "it is possible that a court could find causation between what he did on August 14 and what Ms. Womack experienced on August 26." However, Stanley argues that testimony from trained medical professionals was required to establish causation between the aggravated battery on August 14 and Womack's symptoms on August 26. Stanley asserts "in order to determine whether something is a 'probable consequence' of an earlier injury, there must be medical testimony showing causation between the two." For support of this proposition, Stanley relies on a workers compensation case which states: "When there is expert medical testimony linking the causation of the second injury to the primary injury, the second injury is considered to be compensable as the natural and probable consequence of the primary injury." *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 516, 154 P.3d 494 (2007).

To the extent Stanley relies on principles of civil law for the proposition that expert medical testimony is required to establish causation in this case, it must be noted:

7

"[R]estitution hearings are not civil-damages trials; they are add-on evidentiary hearings at the end of a criminal proceeding that has focused mainly on the question of guilt or innocence. Accordingly, our Supreme Court has said that the rules for proving damages in a restitution hearing are not as strict, and the district court's value determination ultimately must be based on reliable evidence that leads to a defensible figure." *State v. Davis*, 48 Kan. App. 2d 573, 581, 294 P.3d 353 (2013), *summarily rev'd and remanded on other grounds* May 6, 2014.

An example of how less stringent the rules are regarding proving causation at a restitution hearing can be seen in *State v. Phillips*, No. 89,352, 2003 WL 22176026, at *1 (Kan. App. 2003) (unpublished opinion), where the court did not require medical testimony to find causation between the defendant's crimes of attempted aggravated indecent liberties and the victim's chiropractic treatment because an inference could be made that years of abuse would cause the victim to suffer injuries. In *Phillips*, the victim testified her need for chiropractic treatment stemmed from 14 years of abuse by the defendant. The district court agreed there was a causal connection between the victim's spinal injury and the defendant's crimes, pointing to testimony that the defendant struck the victim over the head on numerous occasions. This court affirmed noting the substantial likelihood that the years of abuse caused the victim to suffer at least some type of injury. 2003 WL 22176026, at *1.

Moreover, the authority under workers compensation law on which Stanley relies does not support his proposition that medical testimony is required to show causation between symptoms and an earlier injury. In *Casco*, the court noted uncontroverted expert medical testimony linking the causation of the second injury to the primary injury is *sufficient* to find the second injury is the natural and probable consequence of the primary injury. 283 Kan. 508, Syl. ¶ 4. However, the court did not find that expert medical testimony is always *necessary* to establish causation between two injuries.

8

In fact, in the context of workers compensation law, the general rule is "medical evidence is not necessary to prove causation." *Lake v. Jessee Trucking*, 49 Kan. App. 2d 820, 844, 316 P.3d 796 (2013); see *Webber v. Automotive Controls Corp.*, 272 Kan. 700, 705, 35 P.3d 788 (2001). "This is especially true where, as here, [there is] no contrary evidence, or evidence of a separate and distinct cause." *Wagoner v. Pur-O-Zone, Inc.*, No. 111,017, 2014 WL 4082514, at *3 (Kan. App. 2014) (unpublished opinion); see also *Casco*, 283 Kan. at 515 ("[A] factfinder cannot disregard undisputed evidence that is not improbable, unreasonable, or untrustworthy. Such evidence must be regarded as conclusive."). For example, in *Wagoner*, this court found medical testimony was not required to establish a meniscus tear in the claimant's knee caused the later problems of lingering pain and his knee giving way intermittently. The *Wagoner* court emphasized that medical testimony was not necessary, especially when there was no contrary explanation for the disability and the claimant testified that he did not have any mechanical problems with his knees prior to the injury. 2014 WL 4082514, at *1, 3.

Here, medical testimony was not required to establish causation between the aggravated battery on August 14 and Womack's symptoms on August 26. Rather, Womack's testimony was sufficient to establish causation when her symptoms occurred just 12 days after the aggravated battery and she stated she was still bruised, in pain, and recovering from her concussion on August 26. The viability of Womack's testimony is further bolstered because she suffered the same symptoms on both August 14 and August 26. Similar to the victim's injuries in *Phillips*, here, the area on her body where Womack was beaten supports the conclusion that the aggravated battery caused Womack's symptoms on August 26. Moreover, unlike the injuries in *Phillips*, there is not just a substantial likelihood the aggravated battery would have caused Womack to have some lingering injury, there was a substantial likelihood that the aggravated battery caused the precise symptoms that occurred on August 26. Given the relaxed rules for proving damages in a restitution hearing, the temporal proximity, and the evidence presented by Womack, there was no requirement that expert medical testimony was necessary to prove

9

causation between the aggravated battery on August 14 and Womack's symptoms on August 26.

Moreover, even Stanley's reliance on workers compensation law does not support his assertion that expert medical testimony is required here. Indeed, in these cases, medical evidence is typically not required to prove causation, especially when there is no contrary evidence of causation and no evidence of a separate cause. Here, as in the proceeding in *Wagoner*, there was no contrary explanation for Womack's symptoms on August 26 and she testified nothing occurred between August 14 and August 26 which would otherwise cause her symptoms. As a result, even the higher standard Stanley relies on does not support the notion that expert medical testimony was required here.

In sum, medical testimony was not required to prove causation and substantial evidence supports the finding that Stanley's crimes caused Womack's symptoms occurring on August 26, 2015. Therefore, the district court did not err in ordering Stanley to pay restitution for Womack's medical expenses and lost wages incurred on and after August 26, 2015.

*The District Court Erred in Ordering Stanley to Pay $5,449.19 in Restitution for Medical Expenses.*

Next, Stanley contends the district court erred in ordering Stanley to pay $5,449.19 in restitution for medical expenses. Specifically, Stanley argues the medical bills in this case do not add up to the total of $5,449.19. "Questions concerning the 'amount of restitution and the manner in which it is made to the aggrieved party' are reviewed under an abuse of discretion standard." *King*, 288 Kan. at 354. A district court exceeds judicial discretion if it rules in a way no reasonable judge would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. *Futrell*, 53 Kan. App. 2d 272, 274, 387 P.3d 176 (2016). "'Although the rigidness and proof of value that lies in a

10

civil damage suit does not apply in a criminal case, the court's determination of restitution must be based on reliable evidence which yields a defensible restitution figure.'" *State v. Hunziker*, 274 Kan. 655, 660, 56 P.3d 202 (2002).

Here, the State discussed with Womack and admitted into evidence copies of her medical bills. At the restitution hearing, the parties agreed that the total sought for medical treatment on August 14, 2015 was $946.38. This amount was the total of $29 for an x-ray performed by United Radiology and $917.38 for Womack's treatment at Ottawa County Health Center. The agreed upon amount for $917.38 of Womack's treatment at Ottawa County Health Center was excluding an accumulated interest of $16.84 for non-payment of the bill. The State also produced a medical bill from Salina Regional ER Physicians for charges of $597 for an emergency room visit on August 26, 2015, and $215 for an emergency room visit on November 13, 2015. Also produced was a medical bill from Salina Regional Health Center for services rendered on August 26, 2015, for the amount of $2,952.81. A medical bill from United Radiology for services rendered on August 26, 2015, showed charges totaling $384. The medical bills for the mental health costs totaled $354.

As the above shows, the medical bills submitted into evidence were in the amounts of: (1) $946.38, (2) $597, (3) $215, (4) $2,952.81, (5) $384, and (6) $354. The total of these medical bills is $5,449.19, which is the amount of restitution for medical bills the district court ordered. However, the emergency room visit on November 13, 2015, charged by Salina Regional ER Physicians in the amount of $215 was not discussed at the restitution hearing. The State concedes this amount should not have been included in restitution order since the State did not establish a causal link between Stanley's aggravated battery and this charge. As a result, that $215 portion of the restitution order is vacated. Stanley remains responsible for $5,234.19 in restitution for medical bills, which, including the $234 for lost wages, adds up to a total restitution in the amount of $5,468.19.

Affirmed in part, vacated in part, and remanded with directions to enter an order of restitution in the amount of $5,468.19, thus vacating the $215 amount for the emergency room visit on November 13, 2015.