NOT DESIGNATED FOR PUBLICATION

No. 118,229

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

FERNANDO MUNOZ-BENITEZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed March 29, 2019. Affirmed.

*James Latta* and *Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky* and *Shawn E. Minihan*, assistant district attorneys, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., SCHROEDER and GARDNER, JJ.

PER CURIAM: Fernando Munoz-Benitez appeals his convictions of rape and two counts of aggravated indecent liberties with a child. He argues the district court gave a clearly erroneous jury instruction, the district court failed to inquire into a conflict between Munoz-Benitez and his attorney, and the district court erred by denying his motion for a downward departure. Finding no error, we affirm.

1

*Factual and procedural history*

Fernando Munoz-Benitez lived with his wife and their four children in an apartment in Overland Park, Kansas. On May 25, 2012, Munoz-Benitez's wife took two of the children with her to the grocery store, leaving Munoz-Benitez home with two of their children—12-year old R.M.R. and a 1-year-old son.

R.M.R. later accused her father of having committed various sexual acts against her at that time. We find it unnecessary for purposes of this appeal to recount those acts here.

The State charged Munoz-Benitez with five counts: one count for the rape of R.M.R., a child younger than 14, in violation of K.S.A. 2011 Supp. 5503(a)(3), two counts of indecent liberties with a child in violation of K.S.A. 2011 Supp. 21-5506(b)(3), and two counts of aggravated criminal sodomy in violation of K.S.A. 2011 Supp. 21-5504(b)(1), all off-grid person felonies. Each of those counts was alleged to have occurred against R.M.R. on or about May 25, 2012.

At trial, R.M.R. testified that Munoz-Benitez had also molested her more than five times before the May 25 incident. She testified that she had not previously reported the crimes to her mother because Munoz-Benitez was physically abusive toward Mother and she was scared he would hurt Mother.

Munoz-Benitez testified at trial and denied having committed the acts charged.

The jury convicted Munoz-Benitez of rape and two counts of aggravated indecent liberties with a child and acquitted him of both counts of aggravated criminal sodomy. Before sentencing, Munoz-Benitez moved for a downward durational departure, noting

2

that he has little criminal history and was the victim of a violent crime of which he still suffers physical effects.

At sentencing, Munoz-Benitez' attorney stated that although he had filed the motion to depart and was prepared to file a notice of appeal, Munoz-Benitez refused to meet with him. Munoz-Benitez told the court that he refused to speak with his attorney because he did not trust him and he wanted his attorney to pressure R.M.R. to testify differently at trial. The court denied Munoz-Benitez' departure motion and sentenced him to three hard-25 life sentences, with two to run consecutively and one to run concurrently. Munoz-Benitez timely appealed.

*Was jury instruction 17, a multiple acts instruction, clearly erroneous?*

Munoz-Benitez first challenges the multiple acts instruction given to the jury. R.M.R. testified that Munoz-Benitez touched her breasts and vaginal area more than five times before May 25, 2012. However, the State charged Munoz-Benitez with one count of aggravated indecent liberties for all acts before the May 25 incident. Because R.M.R. testified to more acts than the State had charged, the district court gave a multiple acts instruction. That jury instruction, based on PIK Crim. 4th 68.100, stated:

> "The State claims distinct multiple acts which each could separately constitute the crime of aggravated indecent liberties and/or aggravated criminal sodomy. In order for the defendant to be found guilty of aggravated indecent liberties and/or aggravated criminal sodomy, you must unanimously agree upon the same underlying act."

When analyzing a jury instruction issue, we follow a three-step process. First, we determine if the issue is preserved for review. Second, we determine whether error occurred. Third, we determine whether any error requires reversal or was harmless. *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015).

3

As to the first step, reviewability, Munoz-Benitez did not object to the instruction he now challenges. Even so, this is not fatal to his claim. Under K.S.A. 2018 Supp. 22-3414(3), we can review the instruction, but only for clear error. See *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012). An instruction is clearly erroneous when "'the reviewing court is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'" *State v. Barber*, 302 Kan. 367, 377, 353 P.3d 1108 (2015); see *Williams*, 295 Kan. 506, Syl. ¶ 5. The burden of showing clear error belongs to Munoz-Benitez as the complaining party. See 295 Kan. at 516. In evaluating whether an instruction amounted to clear error, we exercise unlimited review of the record. *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014).

When determining whether an instruction was clearly erroneous, we first determine whether any error occurred by determining whether the instruction was factually and legally appropriate. *State v. Sisson*, 302 Kan. 123, 129, 351 P.3d 1235 (2015). An instruction is legally appropriate when it fairly and appropriately states the applicable law. An instruction is factually appropriate when sufficient evidence, viewed in the light most favorable to the requesting party, supports a factual basis for the instruction. *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012). In this analysis, we have an unlimited standard of review and we do not reweigh the evidence or redetermine issues of credibility. 295 Kan. at 161-62.

Munoz-Benitez argues that the word "could" in the instruction's first sentence is ambiguous, having two possible meanings: "The State claims distinct multiple acts which each could separately constitute the crime." He contends that the jury may have concluded that any of the multiple acts meets the elements of the crime and thus satisfies one of the charged crimes. If so, the instruction could have led the jury to believe the district court was directing a verdict, amounting to clear error.

But this instruction is legally appropriate, as it fairly and accurately states the applicable law. Several panels of this court have considered this very issue. All have rejected Munoz-Benitez' position, holding that the multiple acts instruction based on PIK Crim. 4th 68.100 is an accurate statement of law on multiple acts. See *State v. Aguilar*, 52 Kan. App. 2d 466, 471-73, 367 P.3d 324 (2016); *State v. Mosby*, No. 115,598, 2017 WL 2610765, at *7-8 (Kan. App. 2017) (unpublished opinion), *rev. granted* 308 Kan. 1599 (2018); *State v. Billings*, No. 109,726, 2014 WL 6772484, at *4-5 (Kan. App. 2014) (unpublished opinion); *State v. Anderson*, No. 108,415, 2013 WL 6331600, at *3-8 (Kan. App. 2013) (unpublished opinion); *State v. Sumpter*, No. 108,364, 2013 WL 6164520, at *7-8 (Kan. App. 2013) (unpublished opinion). We are not bound to follow a published opinion of another panel. See *State v. Futrell*, 53 Kan. App. 2d 272, 278, 387 P.3d 176 (2016), *aff'd in part and rev'd in part on other grounds* 308 Kan. 128, 418 P.3d 1262 (2018). But we find these cases to be well reasoned and agree with their conclusions on this issue.

Munoz-Benitez attempts to distinguish these cases by arguing that the word "could," when read in context with the word "constitute," makes his argument more compelling than the arguments of previous appellants. We remain unpersuaded. Instead, we agree with previous panels that the wording from PIK Crim. 4th 68.100 is a fair and accurate statement of law. Jurors who read the jury instructions as a whole would not misinterpret the language—that the "State claims distinct multiple acts which each could separately constitute the crime"—to mean that the district court was directing a verdict.

Munoz-Benitez does not claim that the instruction was not factually appropriate, and we consider issues not adequately briefed as waived or abandoned. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). Nevertheless, we believe the multiple acts instruction was factually appropriate, as the State presented evidence of multiple acts allegedly committed against R.M.R. before May 25, but charged him with only one count for those incidences. Because the instruction was legally and factually appropriate, the

5

district court did not err in giving it. See *Aguilar*, 52 Kan. App. 2d at 471-73. Certainly, no clear error has been shown.

*Did the district court err by not inquiring into the conflict between Munoz-Benitez and his attorney?*

Next, Munoz-Benitez argues that the district court erred when it knew, or should have known, of a potential conflict between Munoz-Benitez and his attorney but failed to inquire about it. Munoz-Benitez points to his attorney's written and oral statements that Munoz-Benitez had not met with him and to his own statement to the court that he had refused to meet with his attorney because he did not trust him. Munoz-Benitez argues these statements should have alerted the district court to a complete breakdown in communication between Munoz-Benitez and his attorney, triggering the district court's duty to inquire further, and that the district court abused its discretion by failing to do so. In essence, Munoz-Benitez contends he was deprived his right to effective assistance of counsel during the sentencing proceeding.

The State concedes that the district court did not conduct an inquiry. However, it contends that the district court did not need to conduct an inquiry because "both Defendant and defense counsel fully explained that the dissatisfaction arose out of how defense counsel cross-examined R.M.R.," and cross-examination is a matter of trial strategy that is within counsel's discretion.

The Sixth Amendment to the United States Constitution gives defendants the right to effective assistance of counsel during all critical stages of a criminal proceeding. *State v. Brown*, 300 Kan. 565, 574-75, 331 P.3d 797 (2014). In accordance with this right, "'counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest.'" *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]). It is

6

the district court's task to ensure a defendant's Sixth Amendment right to counsel is honored. See *State v. Cromwell*, 253 Kan. 495, 507, 856 P.2d 1299 (1993). When a district court learns of a possible conflict of interest between an attorney and a defendant, the court has a duty to inquire further. "A trial court abuses its discretion if it fails to inquire further after becoming aware of a potential conflict between an attorney and client." *State v. Carver*, 32 Kan. App. 2d 1070, 1078, 95 P.3d 104 (2004) (citing *State v. Taylor*, 266 Kan. 967, 978, 975 P.2d 1196 [1999]).

Without an inquiry below, the record on appeal provides no way to assess the alleged conflict or to determine if any conflict adversely affected counsel's performance. *Brown*, 300 Kan. at 578.

> "Ordinarily, the appropriate remedy, in the absence of a suitable record on appeal concerning the alleged conflict of interest, is to remand to the trial court for a determination of whether the defendant can 'establish that the conflict of interest adversely affected his counsel's performance.' *State v. Gleason*, 277 Kan. 624, 653-54, 88 P.3d 218 (2004) (quoting *Mickens v. Taylor*, 535 U.S. 162, 174, 122 S. Ct. 1237, 152 L. Ed. 2d 291 [2002])." *State v. Vann*, 280 Kan. 782, 792, 127 P.3d 307 (2006), *modified by Brown*, 300 Kan. 565.

But where the record is sufficient to demonstrate an actual conflict, that conflict necessarily adversely affects counsel's performance and prejudice is presumed. See *Mickens v. Taylor*, 535 U.S. 162, 172 n.5, 122 S. Ct. 1237, 152 L. Ed. 2d 291, *reh. denied* 535 U.S. 1074 (2002) (holding "'actual conflict'" for Sixth Amendment purposes is necessarily conflict of interest adversely affecting counsel's performance); *State v. Prado*, 299 Kan. 1251, 1261, 329 P.3d 473 (2014) (reversing the district court's denial of defendant's motion to withdraw his plea, vacating his sentence, and remanding to the district court to appoint conflict-free counsel to represent him at a new hearing on his motion to withdraw his plea because an actual conflict of interest was shown); *State v. Sharkey*, 299 Kan. 87, 101, 322 P.3d 325 (2014) (presuming prejudice when defendant

7

was "constructively denied his right to counsel because of his attorney's conflict of interests").

We thus review the record. At sentencing, the district court asked whether the parties had seen the presentence report. Defense counsel replied that he had seen it but when he went to visit his client to discuss it with him, Munoz-Benitez "refused to leave his cell" so he had not discussed it with him. Before pronouncing sentence, the district court asked Munoz-Benitez' attorney if he wanted to say anything. He replied that he preferred to have defendant speak first, if he wished. Munoz-Benitez did so.

> "THE DEFENDANT:  Of course, your honor.
> "The girl is here present. She can tell the truth right now, or I'm the one who's going to tell the truth.
> "THE COURT:  Okay. Go on.
> "THE DEFENDANT:   She told me—She approached me telling me to kiss her right there.
> "She's there. She can tell the truth right now. She knows perfectly what happened.
> "Everything is a lie.
> "THE COURT:  Okay. Is there anything else you want to say?
> "THE DEFENDANT:   Of course.
> "But I want her to tell the truth, not just myself. She has to tell the truth."

Defense counsel then argued for a departure. His motion to depart, filed before sentencing, noted that the defendant had "refused to meet with Counsel regarding the details of this motion." The court then noted its intent to impose the sentence.

> "THE COURT:  The Court is going to note first of all that no matter which scenario this is, if it's only one of two as you indicated . . . and I don't know that it's as simple as that, but no matter which scenario it is, each is devastating to the victim for different reasons in many different ways.

8

"This is—

"THE DEFENDANT:  Your Honor, can I say something?

"THE COURT:  Let me finish.  Please let me finish first, and then I'll let you say something."

The district court imposed the sentence and then let Munoz-Benitez speak.

"[THE COURT:]  Now, Mr. Benitez, you said you wanted to say one more thing, and I said I'd let you say one more thing. You can say whatever else.

"THE DEFENDANT: The girl is here.

"She has to tell the truth. She has to speak up.

"This is not just about for—for whatever she said; send me to jail.

"The purpose—The reason why I didn't talk to the attorney is because he has not inspired trust on me.

"I explained to him what happened. He asked me if I remember the things.  I explained to him. He asked me if I remember what happened. I told him 'Of course I remember what really happened.'

"When the girl came here to testify, I wanted my attorney to pressure her to testify even more.

"She knows very well that she's lying.

"Because whatever I just said is just the beginning of a series of things that she used to tell me as soon as the mother went to the supermarket.

"Now that we are here and she's present, she should tell, she should say, she should speak up.

"THE COURT:  Okay. Sir, let me tell you that the focus of today's hearing is not upon your daughter, but rather upon you.

"Your daughter did testify.  [Counsel] did a very good job cross-examining her.

"The Court notes that your statements today would be inconsistent with what your testimony was at the time of trial.  At the time of trial, you denied anything occurred.  Today it sounds like you're suggesting that this was a situation where your daughter approached you in a voluntary sexual manner to have sex with her.

"You've testified, she's testified, the jury has made a decision.  Based upon that decision, I do not find there's any reason that should be set aside.

9

"The Court has imposed sentence."

The question presented is whether Munoz-Benitez made an articulated statement of attorney dissatisfaction sufficient to trigger the district court's duty to inquire further. Although he did not raise this issue below, a defendant is not required to "explicitly request new counsel to initiate the district court's duty to inquire. Instead, [appellate courts] look to whether the district court knew or should have known of a potential conflict." *Prado*, 299 Kan. at 1257.

To trigger the district court's duty to inquire in a criminal case, a defendant must show justifiable dissatisfaction with counsel. *State v. Wells*, 297 Kan. 741, 754, 305 P.3d 568 (2013). This may include a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant. 297 Kan. at 754. Munoz-Benitez alleges a complete breakdown in communication between him and his attorney based on his refusal to meet with counsel one time and his statement that his counsel had not inspired his trust because counsel had not pressed the victim hard enough during cross-examination. But "lackluster advocacy does not equate to an obvious conflict that must receive immediate, on-the-record attention from the district court." *State v. Hulett*, 293 Kan. 312, 323, 263 P.3d 153 (2011). For example, a defendant's statement that his attorney was not defending him constitutes lackluster advocacy which does not trigger the court's duty to inquire. *In re D.R.*, No. 119,119, 2018 WL 5851604, at *6 (Kan. App. 2018) (unpublished opinion). See *Wells*, 297 Kan. at 755-56 (finding one open-ended question into defendant's concerns about attorney sufficient because it gave defendant an opportunity to suggest justifiable dissatisfaction and defendant failed to articulate anything that warranted follow up). Nor does one refusal to meet with counsel, without more, show a complete breakdown in communication. And here, the reason Munoz-Benitez gave for not meeting with his attorney and for not trusting him was tied to his alleged lackluster advocacy in cross-examining the victim, nothing more.

Under these circumstances, we find the district court's duty to inquire further was not triggered.

But even if that duty were triggered, it was adequately fulfilled. The district court gave Munoz-Benitez a full and fair opportunity to voice his concerns, and Munoz-Benitez pointed only to counsel's manner of cross-examining the victim. The district court responded with reasons why defendant's concerns were baseless—defense counsel "did a very good job cross-examining her," and defendant's statements at sentencing about the victim were inconsistent with defendant's own trial testimony. And "cross-examination is a matter of trial strategy that this court won't second-guess simply because another attorney might have done it differently." *Chavez-Aguilar v. State*, No. 114,337, 2016 WL 7031922, at *1 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1316 (2017). Nothing in the representations to the court or in the relationship between Munoz-Benitez and his counsel during sentencing showed that communications between the two had broken down entirely. To the contrary, Munoz-Benitez appeared with his counsel at sentencing, cooperated with him, did not request new counsel, and did not allege a complete breakdown in their communication. We find this similar to *State v. Richardson*, 256 Kan. 69, 81-82, 883 P.2d 1107 (1994), where the court found the denial of a motion for new counsel during the sentencing phase was not abuse of discretion—the defendant had an opportunity to explain his dissatisfaction, the court stated reasons why defendant's concerns were baseless, and communication between defendant and counsel were not broken down entirely.

No prejudice to Munoz-Benitez has been shown. The closest defendant comes to alleging prejudice is to state that because defendant would not meet with counsel, counsel could not gather additional evidence to support his departure motion, nor could he verify the accuracy of his criminal history report. But Munoz-Benitez fails to allege that any additional evidence existed which could have supported his departure motion or that his

11

criminal history report was not accurate. His conclusory allegation of prejudice fails. We find no error.

*Did the district court err in denying Munoz-Benitez' motion for a downward departure?*

For his final issue on appeal, Munoz-Benitez argues that the district court abused its discretion when it denied his motion for a downward departure. We review a district court's denial of a motion for a departure sentence under Jessica's law for an abuse of discretion. *State v. Jolly*, 301 Kan. 313, 325, 342 P.3d 935 (2015). We will not reverse a sentencing court's denial of a departure from a Jessica's Law sentence unless the court abused its discretion in considering the mitigating factors and circumstances of the case. *State v. Randolph*, 297 Kan. 320, 336, 301 P.3d 300 (2013).

*Discussion*

When the defendant does not contend the trial court made an error of law or fact, we must determine only whether no reasonable person would have agreed with the judge's decision given the mitigating factors found by the judge. *State v. Florentin*, 297 Kan. 594, 599, 303 P.3d 263 (2013). That is our task here.

K.S.A. 2018 Supp. 21-6627(d)(1) provides that a sentencing judge must impose the mandatory minimum term of imprisonment unless it finds substantial and compelling reasons to depart after considering mitigating circumstances. Mitigating circumstances may include, but are not limited to:

"(A) The defendant has no significant history of prior criminal activity;
"(B) the crime was committed while the defendant was under the influence of extreme mental or emotional disturbances;

12

"(C) the victim was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor;

"(D) the defendant acted under extreme distress or under the substantial domination of another person;

"(E) the capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired; and

"(F) the age of the defendant at the time of the crime." K.S.A. 2018 Supp. 21-6627(d)(2).

Munoz-Benitez claims that three mitigating circumstances supported his motion for a departure. First, he had a minimal criminal history. Second, he claims to be more vulnerable than the average prisoner because of an injury to his leg he received as the victim of a violent crime. Third, he asked for a departure to 165 months which, he argues, is still a substantial prison sentence. He claims that a reasonable person would have considered these mitigating factors sufficient to support a downward departure, especially considering that he is likely to be deported after serving his sentence.

We find no abuse of discretion in the district court's denial of the motion for a departure. Munoz-Benitez makes no connection between his lingering pain or injury and his vulnerability in prison, and we find that argument uncompelling. Nor do we agree with Munoz-Benitez' contention that his request for a 165-month sentence should be considered a mitigating factor contributing to a departure sentence. Finally, the sentencing court rejected Munoz-Benitez' lack of criminal history as a factor warranting a departure sentence, nor does it mitigate his current crimes. That determination was within its discretion, and we will not disturb the sentencing court's decision without an abuse of discretion.

Affirmed.